**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LASALLE COMMERCIAL MORTGAGE | ) | |
| SECURITIES, INC., SERIES 2006-MF4 | ) | |
| TRUST, acting by and through its Master | ) | |
| and Special Servicer, MIDLAND LOAN | ) | Case Number: 13 cv 05605 |
| SERVICES, a division of PNC Bank, | ) | |
| National Association, and whose Trustee is | ) | |
| WELLS FARGO BANK, N.A., | ) | Judge: Honorable John Z. Lee |
| | ) | |
| Plaintiff, | ) | |
| | ) | Magistrate Judge: Honorable Jeffrey Cole |
| v. | ) | |
| | ) | |
| BANK OF AMERICA, N.A. as successor | ) | |
| in interest to LaSalle Bank National | ) | |
| Association, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    **A.**    The Parties ..................................................................................................... 4

    **B.**    The Loans And The MF4 Securitization .................................................... 4

    **C.**    LaSalle's Alleged Breach Of Certain RWs In The MLPA ......................... 5

    **D.**    Prior Repurchase Actions ............................................................................ 6

PROCEDURAL HISTORY .................................................................................................. 7

ARGUMENT ........................................................................................................................ 8

I.    Plaintiff Failed To Plead That Any Of The Purported "Systemic" Flaws Constitute A Material Breach Of Any RW ....................................................... 8

II.    Plaintiff Has Failed To Plead Any Legally Cognizable Claims For Relief Under The Unambiguous Language Of The Contracts At Issue ................................... 10

    **A.**    General Principles Of Contract Interpretation ......................................... 11

    **B.**    To Prevail On A Claim, Plaintiff Must, But Does Not, Allege On A Loan-By-Loan Basis A Material Breach Of An RW ...................................... 11

III.    Plaintiff Has Not Alleged Facts Sufficient To State A Claim, On A Loan-By-Loan Basis or Collectively, Of A Breach Of Any RW ............................................ 15

    **A.**    Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches of RW-10, Should Be Dismissed ............................................. 16

        1.    RW-10 Provides That Practical Realization Can Be Achieved By Either Judicial Or Non-Judicial Foreclosure ............................ 17

        2.    There Are No Allegations Of A Material Breach Of RW-10, On A Loan-By-Loan Basis Or Collectively ......................................... 17

    **B.**    Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches Of RW-36, Should Be Dismissed ........................................... 18

1.     There Are No Allegations Of A Material Breach Of RW-36, On A Loan-By-Loan Basis Or Collectively ........................................................19

2.     None Of The Alleged Conduct At Issue Is Covered By RW-36 ...............20

**C.**     Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches Of RW-24, Should Be Dismissed ........................................................21

1.     There Are No Allegations Of A Material Breach Of RW-24, On A Loan-By-Loan Basis Or Collectively ........................................................21

2.     The Alleged Conduct Is Not Covered By RW-24 And Plaintiff Has Failed To Identify The Relevant Customary Industry Standard Allegedly Violated ........................................................23

CONCLUSION ........................................................25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Allen v. Forsyth*,
    25 N.Y.S.2d 822 (Sup. Ct. Livingston Co. 1941)......................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................2, 15, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................2, 15, 16, 20

*Benvenuto v. Rodriguez*,
    108 N.Y.S.2d 410 (App. Div. 1st Dep't 1951) .........................................................14

*Birnbaum v. Bank of Am.*,
    No. 06 Civ. 8218, 2009 WL 8599404 (S.D.N.Y. Feb. 17, 2009) .............................10

*Bissessur v. Indiana Univ. Bd. of Trustees*,
    581 F.3d 599 (7th Cir. 2009) ....................................................................................16

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) ......................................................................................2

*Burke v. 401 N. Wabash Venture, LLC*,
    No. 08 C 5330, 2010 WL 2330334 (N.D. Ill. June 9, 2010) ............................. 15-16

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984).................................................................................................21

*Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp.*,
    368 B.R. 679 (N.D. Ill. 2006) ..................................................................................10

*First Place Bank v. Skyline Funding, Inc.*,
    No. 10 CV 2044, 2011 WL 824612 (N.D. Ill. Mar. 4, 2011) ..................................10

*Fulcrum Fin. Partners v. Meridian Leas. Corp.*,
    230 F.3d 1004 (7th Cir. 2000) ...................................................................................9

*Guitar Ctr. Stores, Inc. v. 7250 S. Cicero Equities, LLC*,
    No. 07 C 4227, 2007 WL 3374592 (N.D. Ill. Nov. 8, 2007)....................................10

**PAGE(S)**

**CASES:**

*Headrick v. Rockwell Int'l Corp.*,
    24 F.3d 1272 (10th Cir. 1994) ..........................................................................21

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .............................................................................5

*Lawyers' Fund for Client Prot. of N.Y. v. Bank Leumi Trust Co. of N.Y.*,
    727 N.E.2d 563 (N.Y. 2000)...........................................................................14

*Limestone Dev. Corp. v. Village of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ...........................................................2, 3, 24, 25

*LTV Aerospace & Def. Co. v. Thomson-CSF-S.A.* (*In re Chateaugay Corp.*)
    155 B.R. 636 (Bankr. S.D.N.Y. 1993), *aff'd*, 198 B.R. 848 (S.D.N.Y. 1996), *aff'd*, 108 F.3d
    1369 (TABLE) (TEXT IN WESTLAW) (2d Cir. 1997) ................................9

*Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Accept. Co.*,
    No. 00 CIV. 8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002)..................9

*Narumanchi v. Foster*,
    No. 02-CV-6553, 2006 WL 2844184 (E.D.N.Y. Sept. 29, 2006)
    (*aff'd*, 317 F.3d. F. App'x 56 (2d Cir. 2009) (Summary Order)...................7

*Oracle Real Est. Holdings I LLC v. Adrian Holdings Co. I, LLC*,
    582 F. Supp. 2d 616 (S.D.N.Y. 2008) ...........................................................11

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) .............................................................................7

*RGC Int'l Invs., LDC v. ARI Network Servs., Inc.*,
    No. civ. 03-0003-SLR, 2004 WL 189784 (D. Del. Jan. 22, 2004)..............9

*Scholastic, Inc. v. Harris*,
    259 F.3d 73 (2d Cir. 2001) ..............................................................................14

*Sterling Invs. Servs., Inc. v. 1155 Nobo Assocs., LLC*,
    818 N.Y.S.2d 513 (App. Div. 2d Dep't 2006)..............................................14

*Swanson v. Citibank N.A.*,
    614 F.3d 400 (7th Cir. 2010) .............................................................................2

*U.S. Bank Nat'l Ass'n v. Countrywide Home Loans, Inc.*,
    No. 652388/2011, 2013 WL 2356295 (Sup. Ct. N.Y. Co. May 29, 2013)......... 14-15

*United Consumers Club Inc. v. Prime Time Mktg., Inc.*,
  No. 2-07-CV-358, 2010 WL 3326745 (N.D. Ind. Aug. 23, 2010) ...........................................10

*Uribe v. Merchants Bank of N.Y.*,
  693 N.E.2d 740 (N.Y. 1998)....................................................................................................11, 25

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*,
  807 N.E.2d 876 (N.Y. 2004)...........................................................................................................11

*W.W.W. Assocs. v. Giancontieri*,
  566 N.E.2d 639 (N.Y. 1990)...........................................................................................................11

*Wallace v. 600 Partners Co.*,
  618 N.Y.S.2d 298 (App. Div. 1st Dep't 1994), *aff'd*, 658 N.E.2d 715 (N.Y. 1995).................11

*Wallace v. 600 Partners Co.*,
  658 N.E.2d 715 (N.Y. 1995)...........................................................................................................11

## STATUTES & OTHER AUTHORITIES:

12 C.F.R. :
  § 34.41 .........................................................................................................................20-21
  § 34.42 .........................................................................................................................20-21
  § 34.43 .........................................................................................................................20-21
  § 34.44 .........................................................................................................................20-21
  § 34.45 .........................................................................................................................20-21
  § 34.46 .........................................................................................................................20-21
  § 34.47 .........................................................................................................................20-21

12 U.S.C. § 3339.............................................................................................................20-21

*Restatement (Second) of Contracts* § 203 cmt. b (1981) ................................................14

Defendant Bank of America, N.A. ("Bank of America") as successor by merger to LaSalle Bank National Association ("LaSalle"), respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the second amended complaint in this action [Dkt. No. 72] (the "Second Amended Complaint" or "2nd Am. Compl.") filed September 4, 2013 by plaintiff LaSalle-Commercial Mortgage Securities, Inc., Series 2006-MF-4 Trust ("Trust"), acting by and through its Master and Special Servicer, Midland Loan Services ("Midland"), and whose Trustee is Wells Fargo Bank, N.A ("Trustee") (collectively, "Plaintiff").

## PRELIMINARY STATEMENT

This action arises out of the origination, underwriting and closing of 374 small balance multi-family mortgage loans by LaSalle's Multi-Family Finance Group ("MFG") as part of a securitization transaction that closed on December 28, 2006 (the "MF4" securitization). Plaintiff claims that LaSalle breached certain representations and warranties ("RWs") contained in the contracts governing the MF4 securitization *not* by virtue of any issue specific to any particular loan, but because of alleged "pervasive" or "systemic" flaws in LaSalle's origination, underwriting and/or closing practices generally.

Based on the Second Amended Complaint's conclusory allegations of purported, but non-existent, "systemic" flaws, Plaintiff seeks the drastic remedy of requiring Bank of America to pay damages equivalent to the price of repurchase (the "Repurchase Price") with respect to 282 loans (the "Loans") based on a "systemic" breach theory. Plaintiff seeks this relief notwithstanding the undisputed fact that most of these Loans are performing in accordance with their terms, and since the filing of the initial complaint, approximately 39 MF4 loans have paid off in full. As discussed below, Plaintiff has not adequately pled a claim for the unprecedented relief it is seeking, which is also contrary to the unambiguous terms of the governing contracts, and the Second Amended Complaint should be dismissed.

First, Plaintiff's demand that Bank of America pay the Repurchase Price for all the Loans based on purported "systemic" flaws, which are allegedly RW breaches present with respect to

every one of the Loans, is contrary to the controlling transaction documents and not supported by applicable law. There is nothing in the contracts that permits repurchase based on a theory of "systemic" flaws in the absence of proof of the existence of such flaws in every Loan. In essence, Plaintiff is seeking to rewrite the governing contracts for the MF4 transaction without having to satisfy the explicit, agreed-upon requirements and procedures under the relevant contracts, which necessitate that Plaintiff plead as to each individual loan that the contractual repurchase criteria have been satisfied. The Second Amended Complaint, however, does not contain a single allegation relating to the origination, underwriting, or closing practices performed by LaSalle in connection with any individual Loan, such that an RW breach could be pled, but rather relies on a "systemic" breach rubric which has no basis in the facts alleged. As such, the operative contracts provide Plaintiff no basis for relief. Because the Second Amended Complaint does not even attempt to plead a right to compel repurchase on a loan-by-loan basis as required by the governing contracts—let alone facts sufficient to justify damages on each of the 282 Loans at issue at an estimated cost of hundreds of millions of dollars—the Second Amended Complaint should be dismissed in its entirety. *See infra* Points II-III.

Second, it is well-established that conclusory allegations lacking factual support are not sufficient to adequately plead a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' . . . 'will not do'") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Swanson v. Citibank N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("'abstract recitations of the elements of a cause of action or conclusory legal statements'" do not adequately allege a claim) (*quoting Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). In applying this standard, the Seventh Circuit has held that "[i]f discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803-04 (7th Cir. 2008).

In order to be entitled to a remedy under the contractual Repurchase Provisions (as defined below, *see infra* at 6), Plaintiff must establish the existence of a material breach of an

RW that caused a Material Adverse Effect (as defined below, *see infra* at 6) on a loan-by-loan basis. The Second Amended Complaint, however, contains no alleged facts demonstrating that any of the three RWs at issue were breached as to each (or any individual) Loan. Plaintiff cannot pass the *Twombly* test by relying on the conclusory *ipse dixit* statement that a "systemic" breach by definition means the alleged breach exists as to each Loan.[1] Rather, to be entitled to repurchase of the Loans or the Repurchase Price, Plaintiff would have to prove the existence of a material breach of an RW that caused a Material Adverse Effect as to each Loan. It is apparent from the face of Plaintiff's pleading that each of the purported "systemic" flaws does not apply to each and every Loan, rendering Plaintiff's claims implausible and inadequate.

Indeed, Plaintiff's theory of pervasive "systemic" flaws was rejected by the jury in a repurchase action tried in the Western District of Oklahoma (the "Oklahoma Action"), which found for Bank of America on one of the three MFG loans at issue, notwithstanding that Plaintiff alleged the same "systemic" flaws which purportedly infected all MFG loans. *See infra* at 6-7. Likewise, the jury's verdict in that same action finding in favor of Bank of America with respect to Plaintiff's RW-10 claims, on both of the two loans as to which an RW-10 claim was asserted, also demonstrates that the alleged "systemic" flaw as to RW-10 necessarily did not affect all the Loans with collateral properties located in Washington and Oklahoma as is alleged. Thus, the jury's verdicts in the Oklahoma Action destroy Plaintiff's "systemic" flaws theory.

Midland's Second Amended Complaint must be dismissed on the additional ground that, under governing New York law, a breach of warranty must be *material* in order to be actionable. Nowhere does the Second Amended Complaint plead that any purported breach of any RW as to any Loan is material. Instead, Plaintiff merely couples quoted language from a particular RW with conclusory allegations of breach as to all of the Loans based on alleged "systemic" flaws in

---

[1] There can be no legitimate dispute that discovery regarding the origination and/or underwriting of over 250 Loans will be "more than usually costly," and Midland should not be permitted to subject Bank of America to such burdensome, expensive and time consuming discovery based on the vague, conclusory allegations contained in the Second Amended Complaint. *See Limestone,* 520 F.3d at 803-04.

LaSalle's MFG lending processes generally. These allegations, which do not even attempt to plead a material breach (as to Loans individually or in the aggregate), therefore are insufficient to state an actionable claim. *See infra* Point I.

## STATEMENT OF FACTS[2]

### A. The Parties

In the Second Amended Complaint, Plaintiff amended its pleading to assert its claims in the name of the Trust. The Trust brings this suit by and through Midland, the Master Servicer and Special Servicer for the Trust. 2nd Am. Compl. ¶ 11. The Trustee, Wells (which was the plaintiff in the initial complaint ("Initial Complaint" or "Initial Compl.") and the First Amended Complaint ("First Amended Complaint" or "1st Am. Compl.") [Dkt. Nos. 1 & 35]), is a national banking association with its principal place of business in South Dakota. *Id.* ¶ 12. Bank of America is a national banking association with its principal place of business in North Carolina. *Id.* ¶ 16. Effective October 1, 2007, Bank of America acquired LaSalle, formerly a national banking association with its principal place of business in Illinois, and assumed all of LaSalle's rights and obligations under the contracts governing the MF4 securitization. *Id.* No beneficiary of the Trust is a citizen of North Carolina. *Id.* ¶ 17.

### B. The Loans And The MF4 Securitization

LaSalle is the seller of the loans that were securitized in the MF4 transaction. 2nd Am. Compl. ¶ 2. LaSalle's affiliate, LaSalle Commercial Mortgage Securities, Inc. ("LaSalle Commercial"), purchased the loans from LaSalle and deposited the loans into the MF4 Trust in the securitization process. *Id.* The MF4 securitization is governed by several integrated agreements, including a Pooling and Servicing Agreement dated as of December 1, 2006

---

[2]   Solely for purposes of this motion, Bank of America recites herein the facts as alleged in the Second Amended Complaint and as set forth in documents attached as exhibits to the Second Amended Complaint, incorporated by reference or that are integral to Plaintiff's claims, or as set forth in materials as to which the Court may take judicial notice. *See infra* at 5 n.3, 7 n.7.

("PSA") and a Mortgage Loan Purchase Agreement dated as of December 20, 2006 ("MLPA").[3] *Id.* ¶ 1.

Exhibit 3 to the Second Amended Complaint identified 282 of the 374 loans in the MF4 Trust as the Loans at issue in this action. 2nd Am. Compl. ¶ 9. Thus, approximately 25% of the loans (92) in the original MF4 pool have been paid in full after six years, and at least eight (8) loans were paid off in full in just the two months between Plaintiff's commencement of this action and the filing of its First Amended Complaint. *See* [Dkt. No. 1] ¶ 11 (identifying 290 loans at issue) *with* 1st Am. Compl. [Dkt. No. 35] ¶ 9 (identifying 282 Loans).[4]

### C. LaSalle's Alleged Breach Of Certain RWs In The MLPA

In the MLPA, pursuant to which LaSalle sold the Loans to LaSalle Commercial, LaSalle made RWs concerning certain aspects of the MF4 loans. 2nd Am. Compl. ¶¶ 2-3. Plaintiff contends that LaSalle breached three of these RWs (*i.e.*, RW-10, RW-24 and RW-36) and seeks to require Bank of America to pay the Repurchase Price for all of the Loans as a result of such alleged breaches. *Id.* ¶¶ 9, 29, 30, 39, 50.

---

[3] The relevant portions of the PSA and MLPA are attached hereto as Exhibits 1 & 2, respectively. On a motion pursuant to Rule 12(b)(6), courts may consider certain matters outside the four corners of the pleading, including contracts and other documents attached as exhibits to the complaint, incorporated by reference or that are integral to the claim. *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). Relevant pleadings and transcripts are also attached hereto as Exhibits 3-4. The Exhibits are referred to herein as "Ex. [___]."

[4] In the Second Amended Complaint, Plaintiff did not revise its list of Loans to reflect the number of Loans that have paid off since Plaintiff filed its First Amended Complaint (*i.e.*, the current number of Loans at issue), notwithstanding that Plaintiff acknowledged that the "status [of certain Loans] may change during the course of this litigation" (2nd Am. Compl. at 7 n.2), and that it is not seeking repurchase as to those Loans that are or will be paid off in full. *See* Hr'g Tr. dated August 13, 2013 [Dkt. No. 70] at 15:8-10. Indeed, according to the Plaintiff Trust's monthly statements made publicly available to the Certificateholders regarding the MF4 loans pursuant to the PSA ("Trust Reports") (*see* Ex. 1 at 150 (PSA § 4.02)), an additional twenty-two (22) loans have been paid off in full in the six (6) months since Plaintiff filed its First Amended Complaint on February 28, 2013, making the total number of Loans at issue 260 as of the date of this motion. Moreover, according to Plaintiff's First Amended Complaint, there are 179 Loans at issue that remain in the MF4 pool and are not in special servicing. *See* 1st Am. Compl at 5 n.2. Of those 179 Loans, 175 are either still performing according to their terms (more than six years after being made) or have been paid in full according to the most recent Trustee Report. The Second Amended Complaint, however, no longer alleges how many Loans are in special servicing (*i.e.*, arguably troubled loans) or that are alleged to have been resolved. 2nd Am. Compl. at 7 n.2.

Section 2.03(b) of the PSA and section 6(e) of the MLPA (the "Repurchase Provisions") plainly set forth the procedure and requirement for the repurchase of loans based on alleged breaches of RWs (the "Repurchase Remedy"). The Repurchase Provisions state, in relevant part:

> If . . . the Special Servicer . . . or the Trustee discovers . . . or receives notice of . . . a breach of any representation or warranty with respect to a Mortgage Loan . . . (a "Breach"), which . . . Breach . . . materially and adversely affects the value of such Mortgage Loan, the related Mortgaged Property or the interests of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property, such . . . Special Servicer, [or] the Trustee . . . shall give prompt written notice of such . . . Breach . . . and shall request . . . that [LaSalle], [within] 90 days . . . (i) cure such . . . Breach . . . (ii) repurchase the affected Mortgage Loan . . . or (iii) substitute a Qualified Substitute Mortgage Loan. . . .

Ex. 1 at 72 (PSA § 2.03(b)); *see also* Ex. 2 at (MLPA 6-7 § 6(d)-(e)). To be entitled to the Repurchase Price[5] under the Repurchase Provisions, Plaintiff must show a material breach of an RW which caused a material adverse effect on the value of the Loan in question or the related mortgage property ("Mortgaged Property"), or the interests of the Trustee and Certificateholders in such Loan or Mortgaged Property ("Material Adverse Effect"). *See* 2nd Am. Compl. ¶¶ 54, 63.

### D. Prior Repurchase Actions

In its capacity as trustee for two other LaSalle securitizations ("MF2" and "MF3"), Wells had commenced a total of five other actions seeking to require LaSalle to repurchase over 900 MF2 and MF3 loans ("Prior Repurchase Actions").[6] In the Oklahoma Action, a jury clearly rejected the same "systemic" flaws theory advanced here—that all loans in pools from LaSalle's MFG program involved RW breaches resulting in Material Adverse Effects based on "systemic" flaws that purportedly existed in LaSalle's origination, underwriting, and appraisal processes. *See* Ex. 3 (*Wells Fargo Bank N.A. v. LaSalle Bank Nat'l Ass'n*, No. 5:08-cv-1125-C (W.D.

---

[5]   Under the MLPA and PSA, the terms "Repurchase Price", used herein, and "Purchase Price", which is used in the Second Amended Complaint, have the same meaning. *See* Ex. 2 at  8 (MLPA § 6(e)).

[6]   Only two of the Prior Repurchase Actions concerning five loans, presumably hand-picked by Plaintiff as its strongest cases, went to verdict.

Okla.) [Dkt. No. 515]).[7]  In the Oklahoma Action, Wells sought the repurchase of three MFG loans (made around the same time period as those at issue here and cherry-picked by Wells to be included in that action) based on the allegation that LaSalle breached RWs identical to RWs 10, 24 and 36 (the RWs at issue here) on the theory that the alleged "systemic" flaws resulted in the breach of these RWs which resulted in a Material Adverse Effect.

The verdict for Bank of America on one of the three loans in that case, the Heritage Ridge Loan ("Heritage Loan"), demonstrates that RWs 10, 24 and 36 were not breached with Material Adverse Effect as to that loan.  If any one of the RWs had been breached in connection with the Heritage Loan, the jury would have found for plaintiff Wells as to the Heritage Loan.  Thus, the jury's conclusion that there was no breach of RW 10, 24 or 36 with respect to the Heritage Loan demonstrates that there were no "systemic" flaws that infected each loan made by MFG.  Moreover, the jury found in favor of Bank of America with respect to all of Wells' RW-10 claims, on both the Heritage Loan and the other loan as to which an RW-10 claim was asserted.  That finding means that the alleged "systemic" flaw as to RW-10 necessarily did not affect all the Washington and Oklahoma Loans in the MF4 pool.  Thus, the jury's verdicts on the Heritage Loan and RW-10 destroy Plaintiff's "systemic" flaws theory.

## PROCEDURAL HISTORY

On December 17, 2012, Wells filed the Initial Complaint in this action in the United States District Court for the Southern District of New York ("SDNY") seeking to require Bank

---

[7]    The Court may take judicial notice of the jury's findings in the Oklahoma Action.  *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment"); *see also Narumanchi v. Foster*, No. 02-CV-6553, 2006 WL 2844184, at *3 (E.D.N.Y. Sept. 29, 2006) ("relevant facts" for motion to dismiss, including the "jury verdict in the related action, are public documents subject to judicial notice, and are not in dispute"), *aff'd*, 317 F.3d. F. App'x 56 (2d Cir. 2009) (Summary Order). The Prior Repurchase Actions also included three other actions concerning a total of 27 individual MF2/MF3 loans.  *See* actions captioned *Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n* – No. 3:07-cv-0449-MRM (S.D. Ohio); No. 2:08-cv-1448-JCM-RJJ (D. Nev.); No. 1:11-cv-0166 (N.D. Ill.). Another action involved Wells' attempt to have Bank of America repurchase *en masse* over 900 MF2/MF3 loans based on similar claims of "systemic" flaws as alleged here: No. 1:11-cv-02884 (N.D. Ill.).  These actions have all been settled.

of America to repurchase 290 loans under the Repurchase Provisions alleging breaches of RW-10, RW-24 and RW-36 based on so-called "systemic" flaws in MFG's lending processes. *See generally* Initial Compl. [Dkt. No. 1]. On January 30, 2013, Bank of America moved to dismiss the Initial Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b) on the basis that Wells failed to adequately state a claim for relief. *See* Mem. of Law In Supp. of Mot. To Dismiss the Initial Compl. [Dkt. No. 29]. Rather than responding to the motion, Wells filed the First Amended Complaint on February 28, 2013 seeking damages for 282 Loans (instead of repurchase), but based on identical factual allegations concerning "systemic" flaws as were asserted in the Initial Complaint. *See generally* 1st Am. Compl. On March 28, 2013, Bank of America moved to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b) on various grounds, including that the PSA and MLPA did not entitle Plaintiff to pool-wide repurchase of the 282 Loans based on alleged "systemic" or "pervasive" flaws, and that Plaintiff failed to allege facts pleading a material breach of the three RWs at issue, as required to state a plausible claim for relief under the Repurchase Provisions. Following transfer to this Court,[8] Plaintiff filed the Second Amended Complaint changing the named plaintiff in this action from the Trustee Wells to the Trust itself. *See generally* 2nd Am. Compl. The Second Amended Complaint has not corrected the fundamental defects underlying Plaintiff's claims.

## ARGUMENT

### I. Plaintiff Failed To Plead That Any Of The Purported "Systemic" Flaws Constitute A Material Breach Of Any RW

The Second Amended Complaint is deficient because Plaintiff does not allege that any alleged RW breach was "material." Indeed, in Prior Repurchase Actions, Plaintiff argued that a breach need not be material in order to support a claim for repurchase. This argument, however,

---

[8] On July 29, 2013, this action was transferred from the SDNY to the Northern District of Illinois, and was subsequently reassigned to this Court on August 14, 2013. *See generally* [Dkt. Nos. 51-53, 65]. On September 3, 2013, the Court granted Plaintiff's motion for leave to file the Second Amended Complaint, *instanter*, and ordered Bank of America to file an answer or responsive pleading by September 25, 2013. *See* Order dated September 3, 2013 [Dkt. No. 71].

ignores decades of contract law in the State of New York[9] holding that to prevail on a claim for breach of warranty or contract, the breach must be material. *See, e.g., LTV Aerospace & Def. Co. v. Thomson-CSF-S.A.* (*In re Chateaugay Corp.*), 155 B.R. 636, 649 (Bankr. S.D.N.Y. 1993) (applying New York law, holding that "[i]n order to state a claim for relief in breach of warranty a party must allege: '(1) the existence of an express warranty; (2) material breach of the warranty . . .'") (citation omitted), *aff'd*, 198 B.R. 848 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997); *RGC Int'l Invs., LDC v. ARI Network Servs., Inc.*, No. civ. 03-0003-SLR, 2004 WL 189784, at *6 (D. Del. Jan. 22, 2004) (same); *Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Accept. Co.*, No. 00 CIV. 8613, 2002 WL 818082, at *4 (S.D.N.Y. Apr. 30, 2002) (requiring breach to be "material," even though the contract between the parties referred to "'any' breach of warranty").

A decision issued by the court in the Ohio Action is illustrative. *See Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 3:07-cv-449 (S.D. Ohio). In that action, the court was interpreting an MLPA and PSA similar to those at issue here in all material respects, and it ruled that in order to establish a claim for breach of warranty under New York law, Wells was required to demonstrate not just a breach, but a material breach, in addition to establishing that the Material Adverse Effect was caused by the material breach:

> With respect to the materiality issue, a particular issue being with whether the Plaintiff must prove a material breach of a representation and warranty in order to recover, the court finds the weight of the law is on the defendant's side on this matter. . . . I agree with defendant's interpretation of the relevant case law that Plaintiff must prove as required by New York law that there is a material breach of a representation and warranty. . . .

Ex. 4 (Ohio Trial Tr. at 4:11-16, 5:11-15 (11/13/09)).[10]

---

[9]  The PSA and MLPA provide that they are to be construed under New York law. Ex. 1 at 212-13 (PSA § 11.04); Ex. 2 at 12 (MLPA § 11); *see also Fulcrum Fin. Partners v. Meridian Leas. Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000) (enforcing contract's choice of law provision in breach of contract action).

[10]  Bank of America respectfully disagrees with a ruling from the court in the Oklahoma Action that Wells was not required to prove that any breach was "material," as that decision misinterprets settled New York law on this point. *See Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 08 Civ. 1125,

It cannot seriously be disputed that the Second Amended Complaint contains no allegation that any RW breach resulting from any alleged "systemic" flaws was a "material" breach. Thus Plaintiff has failed to state an essential element of a breach of contract claim under New York law and, therefore, the Second Amended Complaint should be dismissed.

## II. Plaintiff Has Failed To Plead Any Legally Cognizable Claims For Relief Under The Unambiguous Language Of The Contracts At Issue

"[T]he interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage." *Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp.*, 368 B.R. 679, 688-89 (N.D. Ill. 2006). A claim for breach of contract should be dismissed on a motion pursuant to Fed. R. Civ. P. 12(b)(6) where, as here, the contract provision at issue is unambiguous and the facts alleged in the complaint do not state a claim for relief. *See First Place Bank v. Skyline Funding, Inc.*, No. 10 CV 2044, 2011 WL 824612, at *2 (N.D. Ill. Mar. 4, 2011) (granting motion to dismiss breach of contract claim where plaintiff failed to provide any "factual backing" for its "bare assertion" that defendants were required to repurchase loans); *United Consumers Club Inc. v. Prime Time Mktg., Inc.,* No. 2-07-CV-358, 2010 WL 3326745, at *4 (N.D. Ind. Aug. 23, 2010) (granting judgment as a matter of law under 12(b)(6) standard on breach of contract claim where plaintiff only identified the relevant contract provision and alleged it was breached, because "a simple claim that funds are owed is too vague 'to provide sufficient notice to defendants of the plaintiff's claim'") (citation omitted). "At a minimum, there must at least be some ambiguity in the language of the contract before determining that its meaning cannot be resolved on a motion to dismiss." *Guitar Ctr. Stores, Inc. v. 7250 S. Cicero Equities, LLC*, No. 07 C 4227, 2007 WL 3374592, at *3 (N.D. Ill. Nov. 8, 2007); *see also Birnbaum v. Bank of Am.*, No. 06 Civ. 8218, 2009 WL 8599404, at **4, 5 (S.D.N.Y. Feb. 17, 2009) ("[c]ontract language that is clear does not become ambiguous simply

---

Mem. Op. & Order on Mot. for Summ. J., (W.D. Okla. Dec. 10, 2010) [Dkt. No. 323] at 45. The court's decision in the Oklahoma Action is clearly inconsistent with both the ruling in the related Ohio Action and the governing New York law as set forth above.

because one party insists on a different interpretation").

### A. General Principles Of Contract Interpretation

Under New York law, when the meaning of a contract is clear, it is to be enforced according to its terms. *See Uribe v. Merchants Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998). "'The parties' intention should be determined from the language employed.'" *Wallace v. 600 Partners Co.*, 618 N.Y.S.2d 298, 300 (App. Div. 1st Dep't 1994) (citation omitted), *aff'd*, 658 N.E.2d 715 (N.Y. 1995). The rule has even greater force "'where commercial certainty is a paramount concern'" and where, as here, the instrument was negotiated between sophisticated, counseled business people at arm's length. *Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 717 (N.Y. 1995) (citation omitted). A contract "should be construed so as to give full meaning and effect to all of its provisions." *Oracle Real Est. Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 627 (S.D.N.Y. 2008) (applying New York law) (citations omitted).[11] "'[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'" *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (citation omitted).

### B. To Prevail On A Claim, Plaintiff Must, But Does Not, Allege On A Loan-By-Loan Basis A Material Breach Of An RW

The PSA specifically and unambiguously provides that, before Plaintiff is entitled to demand repurchase of a loan, a complaint must allege the existence of a breach that caused a Material Adverse Effect *on a loan-by-loan basis*. Ex. 1 at 72 (PSA § 2.03(b)) (requiring notice of an RW breach "respect to *a Mortgage Loan*") (emphasis added); *see also infra* Point III (demonstrating how each RW at issue unambiguously refers to an analysis of an individual loan,

---

[11]    "It is incumbent on the court, when interpreting a contract, to give the words and phrases contained therein their ordinary, plain meaning." *Wallace,* 618 N.Y.S.2d at 302. "'[E]xtrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'" *W.W.W. Assocs. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) (citation omitted).

not the entire pool).[12]    As discussed above, a jury has already rejected Wells' theory of "systemic" flaws in the Oklahoma Action.  *See supra* at 6-7.  Accordingly, the loan repurchase obligation under the PSA is not triggered and Plaintiff has no basis to seek such relief or demand the Repurchase Price from Bank of America.

That Plaintiff must allege a material RW breach on a *loan-by-loan* basis is demonstrated by the clear language of the PSA, which expressly differentiates between the singular "Mortage Loan" and the plural "Mortgage Loans."  The term "Mortgage Loan" is defined in the PSA as:

> ***Each*** of the mortgage loans transferred and assigned to the Trustee pursuant to Section 2.01 and from time to time held in the Trust Fund.  As used herein, the term 'Mortgage Loan' includes the related Mortgage Note, Mortgage and other documents contained in the related Mortgage File and any related agreements.

Ex. 1 at 35 (PSA § 1.01).  The parties consistently used the term "Mortgage Loan" when they were referring to one individual loan.  *See, e.g.,* Ex. 1 at 8, 22 (PSA § 1.01) (the PSA definitions of the terms "Appraised Value" and "Cut-off Date Principal Balance" clearly refer to a single specific Mortgage Loan).

Conversely, the term "Mortgage Loans" is defined as the "pool of multifamily, mobile home park and mixed-use residential and commercial mortgage loans."  Ex. 1 at 1 (PSA Preliminary Statement).[13]  The parties used the term "Mortgage Loans" when referring to the pool of Mortgage Loans as a whole.  For example:

> "[a]s of the Cut-off Date, the Mortgage Loans have an aggregate Stated Principal Balance equal to $450,901,165"  (Ex. 1 at 3 (PSA Preliminary Statement));

---

[12]    Bank of America contends that to be entitled to relief, Plaintiff is required to demonstrate that the RW breaches at issue resulted in a Material Adverse Effect.  However, Bank of America, at this time, is not moving to dismiss the Second Amended Complaint on the issue of whether the Second Amended Complaint adequately pleads the Material Adverse Effect element of Plaintiff's claims, and reserves its rights to make a dispositive motion with respect to Material Adverse Effect at a later appropriate time, should this litigation go forward.  Bank of America is contending on this motion that material breach is not adequately pled.

[13]    Likewise, the MLPA defined "Mortgage Loans" as the collective group of mortgage loans listed on an exhibit attached to the MLPA (Ex. 2 at 1), and used the term "Mortgage Loan" when referring to one loan.  *See, e.g.,* Ex. 2 at 8 (MLPA § 6(e)) ("The 'Repurchase Price' with respect to any Mortgage Loan or REO Loan to be repurchased pursuant to this Agreement and Section 2.03 of the [PSA], shall have the meaning given to the term 'Purchase Price' in the [PSA]").

"the aggregate Stated Principal Balance of the Mortgage Loans and any REO Loans, with respect to the pool of Mortgage Loans, outstanding immediately before and immediately after such Distribution Date" (Ex. 1 at 150 (PSA § 4.02(v)));

"the aggregate amount of interest on P&I Advances paid to the Master Servicer and the Trustee since the previous Determination Date (or in the case of the first Distribution Date, as of the Cut-off Date), with respect to the pool of Mortgage Loans."

Ex. 1 at 152 (PSA § 4.02(xxiv). In each of these instances, it is obvious that the parties were referring to the collective group of Mortgage Loans and not just to one mortgage loan in particular. Thus, in their definitions and consistently throughout the PSA, when the parties referred to the entire pool of loans, they used the term "Mortgage Loans." However, where, as in the Repurchase Provision contained in section 2.03 of the PSA, the parties meant to refer to an individual loan, they used the singular term "Mortgage Loan." Section 6(d) of the MLPA also indicates that the parties intended to deal with alleged breaches on an individual loan basis, when it refers to "any Breach or Defect that materially and adversely affects the value of *a* Mortgage Loan, the value of *the* related Mortgaged Property or any interest of any Certificateholder in *the* Mortgage Loan or *the* related Mortgaged Property." *See* Ex. 2 at 6-7 (MLPA § 6(d)) (emphasis added). As with the terms "Mortgage Loan" and "Mortgage Loans," the parties also differentiated between the singular and plural forms of "mortgage" and "property," selecting the appropriate form based on whether they intended the provision in question to apply to the entire pool or on a loan-by-loan basis. *See* Ex. 1 at 33, 36 (PSA § 1.01); Ex. 2 at 1 (MLPA Preliminary Statement).[14]

Thus, the parties used one defined term when they were referring to one Mortgage Loan

---

[14] The PSA refers to a Material Adverse Effect on a "Mortgaged Property," which is defined in the PSA as "[t]he real property subject to the lien of a Mortgage" Ex. 1 at 36 (PSA § 1.01), and "Mortgage" has the following definition: "With respect to any Mortgage Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note and creating a lien on the fee and/or leasehold interest in the related Mortgaged Property" Ex. 1 at 33 (PSA § 1.01). In contrast to the PSA's definition of "Mortgaged Property," which clearly refers to one property that secures one Mortgage Loan, the MLPA defines "Mortgaged Properties" as the "properties securing [the] Mortgage Loans [listed on an exhibit to the MLPA]" (Ex. 2 at 1 (MLPA Preliminary Statement)), which in turn refers to the Mortgage Loans collectively.

or Mortgaged Property, and another defined term when they wanted to refer to the pool of Mortgage Loans or the Mortgaged Properties collectively. In light of the fact that the parties used the defined terms correctly and consistently throughout the MLPA and PSA, and Section 2.03 of the PSA and Section 6(e) of the MLPA use the terms "Mortgage Loan" and "Mortgaged Property," the only reasonable conclusion is that the cited Repurchase Provisions contemplate a showing of a material breach on an individual loan-by-loan basis rather than on the pool of "Mortgage Loans" or the "Mortgaged Properties." *See Sterling Invs. Servs., Inc. v. 1155 Nobo Assocs., LLC*, 818 N.Y.S.2d 513, 516 (App. Div. 2d Dep't 2006) ("Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional"). In light of the specific language of these documents, they should be interpreted as written. *See Lawyers' Fund for Client Prot. of N.Y. v. Bank Leumi Trust Co. of N.Y.,* 727 N.E.2d 563, 566-67 (N.Y. 2000*)* ("Bank Leumi's interpretation would render the second paragraph superfluous, a view unsupportable under standard principles of contract interpretation"); *Restatement (Second) of Contracts* § 203 cmt. b (1981) ("Where an integrated agreement has been negotiated with care and in detail and has been expertly drafted for a particular transaction, an interpretation is very strongly negated if it would render some provisions superfluous").[15]

A recent decision under New York law (which also governs this case), *U.S. Bank National Association v. Countrywide Home Loans, Inc.*, No. 652388/2011, 2013 WL 2356295

---

[15]   Any interpretation of the MLPA and PSA such that "Mortgage Loan" means the same thing as "Mortgage Loans," would improperly render the definition of "Mortgage Loan" meaningless. *See Bank Leumi Trust,* 727 N.E.2d at 566-67 (standard rule of contract construction that interpretations that render certain provisions meaningless are disfavored); *see also Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001) ("In determining whether a contract is ambiguous, a court must look at 'the entire integrated agreement,' to 'safeguard against adopting an interpretation that would render any individual provision superfluous'") (citation omitted); *Benvenuto v. Rodriguez*, 108 N.Y.S.2d 410, 412 (App. Div. 1st Dep't 1951) ("well-settled rules of construction require . . . consideration to all parts of a contract to the end that the particular covenant involved be so construed, when possible, as to **give effect and meaning to every word** and expression contained in the agreement") (emphasis added); *Allen v. Forsyth*, 25 N.Y.S.2d 822, 825 (Sup. Ct. Livingston Co. 1941) ("Words are never to be rejected as meaningless if they can be made significant by any reasonable construction").

(Sup. Ct. N.Y. Co. May 29, 2013) ("*US Bank*"), demonstrates that a plaintiff cannot seek repurchase of loans in a trust on a pool-wide basis where the governing contracts do not permit such relief. In *US Bank*, as is the case here, the plaintiff trustee of a securitization trust sought the pool-wide repurchase of all loans in the trust based on alleged "pervasive" breaches of certain representations and warranties in the servicing agreement at issue there. *Id.* at **1-3. Applying New York contract law, the court dismissed the pool-wide repurchase claims seeking the collective repurchase of all the loans in the pool based on allegedly pervasive breaches because "[n]either the language discussing the pool-wide remedy nor the remainder of [that section of the servicing agreement] includes any discussion of 'pervasive breach'." *Id*. at *4. In the current case, the Court should follow this precedent and dismiss this complaint.

In light of the foregoing, the language of the MLPA and PSA plainly requires Plaintiff to present a *loan-by-loan* analysis of whether there has been a material breach before it is entitled to relief under the Repurchase Provisions. It is the process negotiated and agreed to among the parties — including Wells and Midland, both of which are parties to the PSA (Ex. 1 at 1) — and Wells has already demonstrated that this is the proper and workable process by demanding in the four Prior Repurchase Actions, repurchase of 27 specific loans on an individual loan-by-loan basis. *See supra* at n.7.

Plaintiff could have bargained for a collective repurchase remedy for the Loans, but it failed to do so and should now be held to its contractual bargain as set forth in the PSA and MLPA.

## III. Plaintiff Has Not Alleged Facts Sufficient To State A Claim, On A Loan-By-Loan Basis or Collectively, Of A Breach Of Any RW

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570); *see also Burke v. 401 N. Wabash Venture, LLC,* No. 08 C 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010) ("A complaint must include enough factual allegations to 'raise a right to relief above a speculative level'")

(*quoting* Twombly, 550 U.S. at 555). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602-03 (7th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555).

The Court is not required to assume the truth of allegations which consist of mere conclusory statements. *See Iqbal*, 556 U.S. at 678 ("[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The Court also is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citation omitted).

As demonstrated above, in order to state a claim upon which relief may be granted, Plaintiff must identify and properly plead a material breach with respect to an individual Loan. The language of the specific RWs at issue, RW-10, RW-36 and RW-24, support the conclusion that a material breach must be identified with respect to each Loan because they are each loan-specific RWs, unambiguously requiring in each case an analysis of each individual Loan. Plaintiff, however, fails to allege facts identifying a material breach of an RW as to any particular Loan. *See supra* at Points I-II. The Second Amended Complaint should be dismissed on the additional grounds that Plaintiff misinterprets the plain language of each RW at issue, failing to plead factual allegations demonstrating that any RW actually has been materially breached.

**A.    Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches of RW-10, Should Be Dismissed**

Plaintiff asserts that a breach of RW-10 exists with respect to 21 Loans that are secured by Mortgaged Properties located in Washington and Oklahoma ("Washington and Oklahoma Loans"). 2nd Am. Compl. ¶ 30. Plaintiff's RW-10 claim is based on the allegation that LaSalle allegedly utilized the "same form language" in mortgage documents for these 21 Loans "without

any regard for the specific state law requirements for *non-judicial foreclosure*," and, as a result, the mortgage documents for these 21 Loans lack "the necessary language under state law to allow for *non-judicial foreclosure*." *Id.* ¶ 36 (emphasis added). The Second Amended Complaint does not adequately plead a breach of RW-10 with respect to any Washington or Oklahoma Loan, material or otherwise. The notion that this is a pervasive, systemic breach has already been rejected by the jury in the Oklahoma Action. *See supra* at 6-7.

### 1. RW-10 Provides That Practical Realization Can Be Achieved By Either Judicial Or Non-Judicial Foreclosure

RW-10 provides in pertinent part:

> The Mortgage Loan documents for ***each Mortgage Loan*** contain enforceable provisions such as to render the rights and remedies of the holder thereof ***adequate for the practical realization against the Mortgaged Property*** of the principal benefits of the security intended to be provided thereby, ***including realization by judicial*** *or* **non-judicial foreclosure**. . . . [The] Mortgage Loan documents **taken as a whole are enforceable to the extent necessary and customary for the practical realization of the principal rights and benefits afforded thereby.**

2nd Am. Compl. ¶ 29(a) (*citing* MLPA, Ex. B ¶ 10(a-b)) (emphasis added).

Plaintiff's RW-10 claim should be dismissed because even assuming that Plaintiff could obtain only judicial foreclosures on the Mortgaged Properties at issue due to LaSalle's use of "form language" in the Mortgage Loan documents, there still is no breach of RW-10, material or otherwise. RW-10 is clearly disjunctive; it represents that the Mortgage Loan Documents are adequate to allow for the "practical realization" of the mortgage-holder's rights in the collateral, either by "judicial or non-judicial foreclosure". *See id.* The Mortgage Loan documents referenced in the Second Amended Complaint indisputably provide for judicial foreclosure (2nd Am. Compl. ¶ 33), and that is all that is required under the plain and unambiguous terms of RW-10.

### 2. There Are No Allegations Of A Material Breach Of RW-10, On A Loan-By-Loan Basis Or Collectively

RW-10 makes a representation about whether the provisions of the Mortgage Loan documents for "*each* Mortgage Loan," provided for practical realization of the security interests

in the collateral property, thereby necessitating an inquiry into the particular language of the mortgage documents for each Loan. *See supra* at 12-14, 17. Therefore, Plaintiff cannot rely on a theory of "systemic" flaws regarding the use of "form language" in Mortgage Loan documents to state a claim for a breach of RW-10, but must plead facts demonstrating a material breach as to each Loan at issue.

Plaintiff, however, has not made allegations that a material breach of RW-10 existed with respect to any individual Loan at issue or the Loans collectively. The Second Amended Complaint is devoid of factual allegations, let alone a loan-by-loan analysis, concerning the conclusory claim that Plaintiff could not achieve practical realization of the collateral with respect to any of the Oklahoma and Washington Loans. Plaintiff does not allege, among other things: (i) whether any of the Washington and Oklahoma Loans have defaulted such that foreclosure (judicial or non-judicial) was unsuccessfully attempted and, if so, which Loans; or (ii) that Plaintiff attempted to foreclose on any of the 21 Mortgaged Properties at issue, and was prevented from foreclosing on any such property due to the "form language" in the mortgage loan documents;[16] (iii) identify any Loan secured by Mortgaged Property in Oklahoma or Washington as to which Plaintiff has been unable to achieve "practical realization" because non-judicial foreclosure was not available. Without such allegations, Plaintiff has not adequately stated a claim for the breach of RW-10. It is little wonder that the jury in the Oklahoma Action rejected both of the RW-10 claims that have been asserted. *See supra* at 6-7.

### B. Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches Of RW-36, Should Be Dismissed

Plaintiff alleges that RW-36 was breached on a pool-wide basis "due to a lack of independence in the [MFG] appraisal ordering process." 2nd Am. Compl. ¶ 47. As with RW-10, the Second Amended Complaint fails to identify a material breach of RW-36 as to any

---

[16] Plaintiff acknowledges that the Mortgage Loan documents at issue contain language regarding the use of non-judicial foreclosure. *See* 2nd Am. Compl. ¶¶ 33, 35. The Second Amended Complaint contains no allegations that Plaintiff attempted, but failed, to obtain non-judicial foreclosure on any of the properties at issue, let alone on all the properties at issue.

individual Loan. *See supra* at 17-18. The Second Amended Complaint does not plead that there was any breach of RW-36, material or otherwise, because the conduct at issue is not covered by this RW.

### 1. There Are No Allegations Of A Material Breach Of RW-36, On A Loan-By-Loan Basis Or Collectively

RW-36 states:

> An appraisal of the related Mortgaged Property was conducted in connection with the origination of such Mortgage Loan, and such appraisal satisfied the guidelines in Title XI of [FIRREA], as in effect on the date such Mortgage Loan was originated.

2nd Am. Compl. ¶ 29(c) (*citing* MLPA, Ex. B ¶ 36). Plaintiff alleges that RW-36 was breached with respect to all Loans because MFG's appraisal ordering process violated Title XI of FIRREA in "one or more" ways (*i.e.*, because MFG's employees selected the appraisers, or ordered the appraisals or provided certain information to the appraisers or the ways in which appraisals were appealed or appraisal reviews were reviewed). 2nd Am. Compl. ¶¶ 43, 45, 47.

The unambiguous language of RW-36 expressly refers to "[a]n appraisal" conducted with respect to a Mortgaged Property and warrants that "such appraisal" satisfied the guidelines referred to in Title XI of FIRREA. *See* Ex. 2 at B-10 (MLPA, Ex. B ¶ 36). Therefore, Plaintiff must allege a material breach of RW-36 with respect to a specific appraisal for a specific Loan to state a claim under RW-36.

The Second Amended Complaint does not plead a single fact about any particular appraisal ordered or conducted in connection with any particular Loan as to which Plaintiff is demanding the Repurchase Price. Rather, Plaintiff alleges in conclusory fashion that MFG policies in place around the time the Loans were originated, underwritten and closed generally violated certain statements regarding appraisal independence issued by the Office of the Comptroller of the Currency ("OCC"), and that RW-36 was violated in "one or more" ways by how MFG employees generally ordered, appealed and reviewed or otherwise handled appraisals. 2nd Am. Compl. ¶¶ 42-47. Plaintiff does not plead whether any specific alleged appraisal practice was applicable to a particular appraisal for any Loan. *Id.* Nor does Plaintiff allege that

every supposed flaw regarding the appraisal ordering and review process at MFG applies to each Loan. *Id.* For instance, while Plaintiff alleges that LaSalle's appraisal review *process* violated RW-36, Plaintiff has not alleged (nor could it) that every Loan involved an appraisal to be reviewed. *Id.* ¶ 43(c). Rather, Plaintiff alleges in a conclusory manner that MFG's appraisal processes were "systemically flawed" and that RW-36 was violated with regard to all Loans, "in one or more" ways. *Id.* ¶ 43. Therefore, even assuming *arguendo* that RW-36 makes a representation about conduct referred to in the Second Amended Complaint (it does not, *see infra* at 20-21), Plaintiff does not allege which of the Loans had appraisals that failed to satisfy FIRREA or what allegedly flawed practice applied to an appraisal for any particular Loan or how that supposed practice was inconsistent with FIRREA under one of Plaintiff's various theories of liability for a breach of RW-36.

### 2. None Of The Alleged Conduct At Issue Is Covered By RW-36

The Second Amended Complaint fails to state a claim with respect to RW-36 on the additional ground that none of the alleged defects concerning LaSalle's appraisal practices is covered by RW-36. First, Plaintiff inaccurately alleges that RW-36 makes a representation regarding statements issued by the OCC. 2nd Am. Compl. ¶¶ 41-42, 43(g). However, RW-36 makes a representation about Title XI of FIRREA, not OCC statements. By claiming that RW-36 is breached based on allegations that certain OCC statements were violated, Plaintiff mischaracterizes the meaning and scope of Title XI of FIRREA, the only statute referenced in RW-36. The Court need not accept such bare legal conclusions. *See Twombly*, 550 U.S. at 555.

Plaintiff next alleges that RW-36 was breached by the manner in which LaSalle reviewed appraisals and ordered and engaged third-party appraisers. 2nd Am. Compl. ¶¶ 42-43. The conduct alleged by Plaintiff is not covered by FIRREA or RW-36. Title XI of FIRREA and its regulations are silent on the issues of who within a financial institution may order reports from third-party appraisers and who may perform appraisal reviews and appeals. *See* 12 U.S.C. § 3339 (Title XI of FIRREA); 12 C.F.R. §§ 34.41-.47 (regulations promulgated under FIRREA). FIRREA simply requires appraisals to be in writing and to "be performed in accordance with . . .

the appraisal standards promulgated by the Appraisal Standards Board" which are known as "USPAP." 12 U.S.C. § 3339; *see also* 12 C.F.R. § 34.44 (defining "USPAP"). USPAP does not address appraisal ordering, and Plaintiff does not allege that any of the conduct at issue violates USPAP.

As for statements published by the OCC in October 2003 and March 2005, they are not FIRREA or USPAP and do not carry the force of law and thus are irrelevant to an RW concerning FIRREA. *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1282 (10th Cir. 1994) (agency commentary interpreting Department of Labor regulation is a "purely interpretive rule" as distinguished from a promulgated regulation, "does not carry the force of law" and the court is "in no way bound to afford it any special deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984)"). Because RW-36 does not encompass the appraisal ordering and review practices about which Plaintiff complains, the Second Amended Complaint plainly fails to plead a breach of RW-36.

### C. Plaintiff's Claims, To The Extent They Are Premised On Alleged Breaches Of RW-24, Should Be Dismissed

Plaintiff alleges a breach of RW-24 based on alleged "systemic" flaws in MFG's origination and servicing processes. *See* 2nd Am. Compl. ¶ 50. The Second Amended Complaint, however, fails to identify a material breach of RW-24 as to any individual Loan at issue. Moreover, the conduct at issue is not covered by RW-24, and Plaintiff has failed to identify the relevant customary industry standards allegedly violated.

### 1. There Are No Allegations Of A Material Breach Of RW-24, On A Loan-By-Loan Basis Or Collectively

RW-24 states:

> The origination, servicing and collection practices ***used*** by the Seller, or to its knowledge, any prior holder of the related Mortgage Note ***with respect to such Mortgage Loan*** have been in all material respects legal and have met customary industry standards.

Ex. 2 at B-9 (MLPA, Ex. B ¶ 24) (emphasis added). As explained in Point II.B above, Plaintiff must plead a material breach of this RW as to each Loan in question. Such a conclusion is

required by the clear and unambiguous terms of this RW which refers to the practices "used . . . with respect to such Mortgage Loan."

The Second Amended Complaint is silent as to how RW-24 was breached with respect to each (or any) individual Loan. Instead, the Second Amended Complaint vaguely alleges that "LaSalle failed to meet customary industry standards in many ways . . . with respect to each of the Loans" without ever providing the slightest factual support for that conclusory allegation. *See* 2nd Am. Compl. ¶¶ 50-52. For example, Plaintiff alleges that RW-24 was breached on a pool-wide basis because, *inter alia*, LaSalle "had a policy of awarding 'top 10' brokers with additional leniency and exceptions to underwriting guidelines." *Id.* ¶ 50(e). However, Plaintiff does *not* allege (because it would be clearly untrue) that each (or even most) of the 282 Loans was introduced to LaSalle through a "top 10" broker. Nor does Plaintiff allege that every Loan at issue involves exceptions to underwriting guidelines, or that any such exceptions were made as a result of the size or status of the broker. Obviously, a Loan not sourced through a "top 10" broker cannot be in breach of RW-24 based on "top 10" broker allegations because only "top 10" brokers are alleged to have received favoritism. Thus, this alleged flaw (like all the others) is obviously not "systemic."

Plaintiff also alleges that LaSalle violated customary industry standards by requiring MFG staff to communicate with loan brokers, as opposed to with borrowers, and by relying on and forwarding information prepared by loan brokers without verifying the information provided. 2nd Am. Compl. ¶¶ 50(a)-(b), (d), (f). The Second Amended Complaint, however, does not plead that each communication with, or all information provided by any broker for any particular Loan, let alone *every* broker for *all* 282 Loans, was materially inaccurate or deficient, let alone that it violated customary industry standards. Even assuming *arguendo* that LaSalle did communicate with and rely on information from a broker in some instances, the information conveyed by the broker, the level of communication and extent of reliance will vary widely from loan to loan. In order to succeed on a pool-wide basis, Plaintiff must be tacitly alleging, but without a shred of support, that every broker on every loan conveyed information to LaSalle that

-22-

was materially false or inaccurate and that LaSalle relied on that information to the material detriment of a Loan or Mortgaged Property.  Such a conclusory, unsupported allegation does not come close to being plausible.

Although the Second Amended Complaint also alleges that LaSalle "failed to perform an in-depth analysis of the financial condition of the borrowers and guarantors of the Loans" (2nd Am. Compl. ¶ 50(c)), Plaintiff never describes the analysis LaSalle conducted as to any particular Loan, why any analysis was not sufficiently "in-depth" so that customary industry standards were violated or that any such failure led to any material errors in making a particular Loan.  The Second Amended Complaint also alleges in totally conclusory fashion that MFG "emphasized speed and volume of loans over quality," and "failed to employ properly-trained staff in its underwriting and closing positions and failed to adequately document exceptions made to underwriting guidelines."  2nd Am. Compl. ¶ 50(g).  Plaintiff does not allege with respect to any Loan at issue facts giving rise to a plausible inference that the speed and volume of MFG's loan origination or the training of the MFG staff resulted in any errors in underwriting or closing of any particular Loan such that customary industry standards were violated.  The Second Amended Complaint is grossly inadequate in pleading the pervasiveness of flaws under Plaintiff's legally defective "systemic" flaws theory.

### 2. The Alleged Conduct Is Not Covered By RW-24 And Plaintiff Has Failed To Identify The Relevant Customary Industry Standard Allegedly Violated

RW-24 warrants that the "origination, servicing and collection practices" used by LaSalle with respect to the Loans in the MF4 Trust "have been in all material respects legal and have met customary industry standards."  2nd Am. Compl. ¶ 27(b).  In an attempt to support its RW-24 claim, Plaintiff quotes the foregoing language and then describes a list of eight supposed "systemic" flaws in MFG's origination and/or servicing of the Loans.  *Id.* ¶ 50(a)-(h).[17]

---

[17]   The Second Amended Complaint contains no facts concerning which of the purportedly deficient origination, and/or underwriting practices are applicable to which of the 282 Loans at issue.  As discussed above, this is particularly significant because certain of these origination and/or underwriting practices

Although Plaintiff claims that "LaSalle breached [RW-24] with respect to all the Loans because LaSalle's origination and servicing of the Loans did not meet customary standards," the Second Amended Complaint contains no facts regarding the servicing of the Loans.  2nd Am. Compl. ¶ 50.  Accordingly, Plaintiff's RW-24 claim fails as a matter of law to the extent it is based on an alleged defect in servicing the Loans.

The Second Amended Complaint also fails to state a claim to the extent it relies on allegations related to LaSalle's underwriting and closing of the Loans (*e.g.,* 2nd Am. Compl. ¶ 50) because RW-24 makes no representation or warranty as to LaSalle's underwriting or closing practices and neither does any other RW contained within the MLPA.  As it has done in Prior Repurchase Actions, and in order to avoid the simple fact that the plain language of RW-24 does not refer to underwriting or closing, Plaintiff likely will argue that the term "origination" in RW-24 encompasses "underwriting" and "closing."  Any such argument, however, is simply an effort to imply terms into RW-24 that plainly are not in RW-24 and to rewrite the parties' agreement.  The unambiguous terms of the contract demonstrate that if the parties had intended for RW-24 to apply to LaSalle's underwriting and closing practices, in addition to its origination practices, they clearly understood how to expressly do so by using both terms, just as they did in other provisions in the MLPA.[18]  The fact that the terms "underwriting" and "closing" do not appear in RW-24 compels the conclusion that this particular RW does not apply to LaSalle's underwriting and closing practices.  *See supra* at 14 & n.15 (standard rule of contract construction that interpretations that render certain provisions meaningless are disfavored); *see*

---

(even if they were, contrary to fact, flawed) plainly did *not* apply to all of the Loans.  *See supra* at 22-23 (discussing Plaintiff's failure to make a loan-by-loan determination of a breach of an RW).  Moreover, because certain of the loans are continuing to be paid off as agreed and are no longer at issue, it is not clear which of Plaintiff's alleged deficient origination, and/or underwriting practices are even at issue.  *Twombly* and its progeny prohibit this type of moving target pleading.  *See Limestone*, 520 F.3d at 803-04.

[18]    *See* Ex. 2 at B-12 (MLPA, Ex. B) (defining the term "to seller's knowledge" to mean "that no officer, employee or agent of the Seller responsible for the *underwriting, origination or sale of the Mortgage Loans* . . . believes that a given [RW] is not true or inaccurate"); *id.* at B-13 (same).

*also Uribe*, 693 N.E.2d at 743 (where parties to an agreement include certain items on a list, it is presumed that the omission of other items is intentional).[19]

## **CONCLUSION**

For the foregoing reasons, the Court should grant Bank of America's motion to dismiss the Second Amended Complaint in its entirety.

Dated:     September 25, 2013

Respectfully Submitted

Bank of America, National Association, as successor by merger to LaSalle Bank National Association

By:   */s/* Gregory A. Markel
      One of Bank of America's Attorneys

CADWALADER, WICKERSHAM & TAFT LLP
Gregory A. Markel
Jason M. Halper
Lauren U. Y. Lee (admitted *pro hac vice*)
One World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

ARONBERG GOLDGEHN
John M. Riccione, ARDC # 6209375
William J. Serritella, Jr., ARDC # 6210001
Amy M. Rapoport, ARDC # 6293612
330 North Wabash, Suite 1700
Chicago, Illinois 60611
Telephone: (312) 828-9600

---

[19] In support of the claim that Bank of America breached other RWs, Plaintiff states in a wholly conclusory manner that additional breaches of other RWs will be uncovered through discovery "given the pervasive nature of the breaches at issue." 2nd Am. Compl. ¶¶ 66, 77. Plaintiff not only failed to identify the other RWs at issue, but also alleges no facts in support of this claim that demonstrate a material breach of these purported other RWs. Such a conclusory claim, bereft of any facts in support, does not come close to satisfying the pleading standards under *Twombly* and its progeny. *See Limestone*, 520 F.3d at 803-04.