**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LASALLE COMMERCIAL MORTGAGE SECURITIES, INC., SERIES 2006-MF4 TRUST, acting by and through its Master and Special Servicer, MIDLAND LOAN SERVICES, a division of PNC Bank, National Association, and whose Trustee is WELLS FARGO BANK N.A., ) ) ) ) ) ) ) | Case No. 13 CV 05605 |
| Plaintiff, ) ) | |
| - against - ) ) | Honorable John Z. Lee |
| BANK OF AMERICA, N.A. as successor in interest to LaSalle Bank National Association, ) ) ) | Magistrate Judge: Honorable Jeffrey Cole |
| Defendant. ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. LaSalle Street, 7th Floor
Chicago, Illinois 60604
Tel: (312) 762-9450
Fax: (312) 762-9451

DUNBAR LAW P.C.
197 Portland Street, 5th Floor
Boston, Massachusetts 02114
Tel: (617) 244-3550
Fax: (617) 248-9751

SNYDER LAW FIRM LLC
13401 Mission Road, Suite 207
Leawood, Kansas 66209
Tel: (913) 685-3900
Fax: (913) 440-0724

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF THE ALLEGATIONS IN THE AMENDED COMPLAINT .............................3

I.     DEFENDANT SOLD THE LOANS TO THE MF4 TRUST ............................................3

II.    DEFENDANT'S REPRESENTATIONS AND WARRANTIES ......................................3

III.   THE PSA AND MLPA PROVIDE A PURCHASE PRICE REMEDY ...........................5

IV.    DEFENDANT'S BREACH OF THE REPRESENTATIONS AND WARRANTIES .......6

V.     THE BREACHES' MATERIAL AND ADVERSE EFFECT ..........................................7

VI.    DEFENDANT'S REFUSAL TO PAY THE PURCHASE PRICE FOR THE
       DEFECTIVE LOANS .................................................................................................8

ARGUMENT .....................................................................................................................8

I.     STANDARD OF REVIEW .........................................................................................8

II.    THE PSA AND MLPA DO NOT REQUIRE PLAINTIFF TO PLEAD
       "MATERIAL BREACH" ...........................................................................................9

III.   THE PSA AND MLPA DO NOT REQUIRE THE PLEADING OF SEPARATE,
       LOAN-BY-LOAN ALLEGATIONS .........................................................................13

IV.    PLAINTIFF HAS ASSERTED VIABLE CLAIMS ARISING OUT OF
       DEFENDANT'S SYSTEMIC BREACHES OF THE THREE
       REPRESENTATIONS AND WARRANTIES SET FORTH IN THE AMENDED
       COMPLAINT .........................................................................................................18

       A.     The Amended Complaint Sufficiently Alleges Breaches Of Representation
              And Warranty 10 For Each Loan Secured By Property In Oklahoma And
              Washington .................................................................................................19

              1.     Plaintiff Has Sufficiently Pled That Representation And Warranty 10
                     Required Defendant To Provide The Option Of Judicial Or Non-
                     Judicial Foreclosure In All Mortgage Loans Secured By Property In
                     Oklahoma And Washington ...............................................................19

Page

2.      Plaintiff Is Not Required To Allege A Failure To Achieve Practical Realization In Order To State A Claim For Breach Of Representation And Warranty 10......................................................................................20

B.     Plaintiff Has Alleged A Breach Of Representation And Warranty 36 With A Material And Adverse Effect With Respect To All Loans....................................22

C.     Plaintiff Has Alleged A Breach Of Representation And Warranty 24 With Respect To All Loans With A Material And Adverse Effect...............................23

CONCLUSION............................................................................................................................25

## TABLE OF AUTHORITIES

CASES                                                                                              Page(s)

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................8

Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 892 F. Supp. 2d 596 (S.D.N.Y. 2012) ....12, 21

Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ..........12

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .................................................................9, 16

Bissessur v. Indiana University Board of Trustees, 581 F.3d 599 (7th Cir. 2009)........................9

C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd., 626 F. Supp. 2d 837 (N.D. Ill. 2009) .........9

Elias v. Stewart Title of Ill., No. 09 C 6773, 2010 WL 4482102 (N.D. Ill. Nov. 1, 2010) .............9

Intercom Ventures, LLC v. FasTV, Inc., No. 13 C 232, 2013 WL 2357621
    (N.D. Ill. May 28, 2013) ................................................................................15

LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc., No. 04 Civ. 5452 (PKL),
    2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007)................................................10, 24

Liberty Media Corp. v. Vivendi Universal, S.A., 923 F. Supp. 2d 511 (S.D.N.Y. 2013).............10

Limestone Development Corp. v. Village of Lemont, 520 F.3d 797 (7th Cir. 2008) ....................9

LTV Aerospace & Defense Co. v. Thompson-CSF, S.A. (In re Chateaugay Corp.),
    155 B.R. 636 (Bankr. S.D.N.Y. 1993), aff'd, 198 B.R. 848 (S.D.N.Y. 1996), aff'd,
    108 F.3d 1369 (table), 1997 WL 138384 (2d Cir. 1997)........................................11

MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 936 N.Y.S.2d 513 (Sup. Ct. 2012),
    aff'd in part and modified in part on other grounds, 963 N.Y.S.2d 21
    (App. Div. 2013)................................................................................12, 21

MBIA Ins. Corp. v. Credit Suisse Securities (USA) LLC, 927 N.Y.S.2d 517 (Sup. Ct.),
    reconsideration granted on other grounds, 939 N.Y.S.2d 742 (table),
    2011 WL 4865133 (Sup. Ct. 2011)........................................................................15

Orix Real Estate Capital Mkts., LLC v. Superior Bank, FSB, 127 F. Supp. 2d 981
    (N.D. Ill. 2000)................................................................................................9

Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628 (S.D.N.Y. 1999)..........................................10

Reiss v. Fin. Performance Corp., 764 N.E.2d 958 (N.Y. 2001) ....................................................10

Syncora Guar. Inc. v. EMC Mortg. Corp., 874 F. Supp. 2d 328 (S.D.N.Y. 2012).................12, 21

CASES (cont.)                                                                 Page(s)

U.S. Bank National Ass'n v. Countrywide Home Loans, Inc., No. 652388/2011,
    2013 WL 2356295 (N.Y. Sup. Ct. May 29, 2013)............................................17, 18

United States v. Am. Linen Supply Co., 141 F. Supp. 105 (N.D. Ill. 1956) ................................15

Vt. Teddy Bear Co. v. 538 Madison Ave. Realty Co., 807 N.E.2d 876 (N.Y. 2004)....................14

Wells Fargo Bank, N.A. v. Bank of Am., N.A., No. 10 Civ. 9584 (JPO), 2013 WL 1285289
    (S.D.N.Y. Mar. 28, 2013) ...................................................................10, 11, 12, 21

Wells Fargo Bank, N.A. v. Bank of Am., N.A., No. 11 Civ. 4062 (JPO),
    2013 WL 372149 (S.D.N.Y. Jan. 31, 2013) ...........................................................11

Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, 643 F. Supp. 2d 1014
    (S.D. Ohio 2009)................................................................................24, 25

Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. 2:08-CV-1448 JCM (RJJ),
    2011 WL 6300796 (D. Nev. Dec. 15, 2011).....................................................12, 13

Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. CIV-08-1125-C,
    2011 WL 1303949 (W.D. Okla. Apr. 1, 2011).........................................................13

Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. CIV-08-1125-C
    (W.D. Okla. Dec. 10, 2010) ...........................................................11, 12, 20, 23

Plaintiff LaSalle Commercial Mortgage Securities Inc., Series 2006-MF4 Trust (the "Trust"), acting by and through its Master and Special Servicer, Midland Loan Services ("Midland"), a division of PNC Bank, National Association, and whose Trustee is Wells Fargo Bank, N.A., respectfully submits this Memorandum of Law in opposition to the motion of Defendant Bank of America, N.A., as successor in interest to LaSalle Bank National Association, to dismiss the Second Amended Complaint (the "Amended Complaint"). For all of the reasons set forth below, Defendant's motion should be denied.

## PRELIMINARY STATEMENT

This is a case about a mortgage-backed securities trust comprised of loans originated by Defendant in a manner that, among other problems, failed to comply with basic industry standards or applicable regulations. The case seeks redress for Defendant's breaches of representations and warranties concerning loans that it originated and sold to the Trust. Because of fundamental and systemic flaws in Defendant's underwriting and appraisal processes, among other flaws, Defendant's representations and warranties about the loans were untrue at the time they were made. Defendant's breaches of the representations and warranties had a material and adverse effect on the interests of the Trust's investors, known as certificateholders, because the loans were worth less – and the risk to investors was substantially greater – than what Defendant had represented.

Plaintiff, for the benefit of the Trust's investors, seeks to enforce the Purchase Price Remedy specified in the governing agreements. Under those agreements, for each of the approximately 282 loans at issue in this case (the "Loans"), Defendant owes the Trust the contractually defined Purchase Price, consisting of the outstanding principal balance of the loan *plus* all accrued and unpaid interest, unreimbursed servicing advances, expenses incurred in connection with the enforcement of the repurchase obligation (including legal fees) and

liquidation fees, if any.

In support of its motion to dismiss the Amended Complaint, Defendant relies chiefly on two arguments, both of which are meritless.

First, Defendant argues that Plaintiff failed to plead that each breach was material. The plain language of the PSA, however, requires only that the breach have a material and adverse effect on the certificateholders' interest – not a "material" breach and a "material and adverse effect." Plaintiff's attempt to manufacture an additional materiality element has no basis under the language of the governing agreements or well-developed New York law on precisely this topic. Accordingly, Defendant's materiality argument should be rejected.

Second, Defendant argues that the Amended Complaint should be dismissed because its allegations as to the Loans are pled in the plural. According to Defendant's argument, the Amended Complaint is deficient because it classifies the Loans as a whole and does not contain specific loan-by-loan allegations. Defendant's contention in this regard overlooks that the breaches at issue in this case are systemic, meaning that, by definition, they affect all of the Loans in a similar manner; thus, loan-by-loan allegations would be superfluous, repetitive and ultimately pointless. There is no prohibition against treating these Loans as a group and pleading in the plural, where they suffer from shared defects. To the contrary, the federal pleading standards discourage the bloated, repetitive pleading urged by Defendant. Indeed, Plaintiff focused its Amended Complaint on the systemic breaches (as opposed to identifying hundreds of loan-level breaches) to streamline this case while still providing Defendant with sufficient notice of the claims. Of course, at the trial of this case, Plaintiff, with the help of its underwriting, appraisal and financial experts, among other witnesses, will be put to the test of proving that these systemic breaches affected all of the Loans. While Plaintiff expects to prove its case at

trial, all that is required at this stage is that the claims be adequately pled.  Because they are, Defendant's motion to dismiss should be denied.

**SUMMARY OF THE ALLEGATIONS IN THE AMENDED COMPLAINT**

**I.     DEFENDANT SOLD THE LOANS TO THE MF4 TRUST**

On December 28, 2006 (the "Closing Date"), pursuant to a Mortgage Loan Purchase Agreement (the "MLPA") and a Pooling and Servicing Agreement (the "PSA"), a pool of more than $450.9 million in commercial real estate mortgage loans, originated by Defendant, was sold to the Trust for the Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2006-MF4 (the "Trust" or "MF4").   The Trust, in turn, issued certificates to investors (the "Certificateholders").  Am. Compl. ¶¶ 1-2.

The loans that were sold to the Trust and securitized were originated by Defendant's Multifamily Finance Group ("MFG"), a division focused on small loans ($500,000 to $5 million) involving multifamily properties, such as apartment buildings or dwellings for multiple families. Am. Compl. ¶ 21.  Before MF4, MFG also originated series of loans sold to other trusts: "MF1," "MF2," and "MF3."  (Litigation involving MF2 and MF3 shall be referred to as the "MF2/3 Litigation".)   The MF1 loans were generally "portfolio loans," meaning that Defendant originated the loans for its own balance sheet, rather than originating them for sale in connection with a securitization.  Id.  The MF2, MF3 and MF4 series of loans – unlike MF1 – were part of a "conduit" or "for sale" lending platform, which resulted in a loosening of MFG's underwriting and overall risk-management standards and higher delinquency rates for such loans, as compared to MF1.  See generally Am. Compl. ¶¶ 21-28.

**II.     DEFENDANT'S REPRESENTATIONS AND WARRANTIES**

In connection with the MF4 securitization process, Defendant – as the party who originated the loans and selected them for inclusion in the pool – made dozens of representations

3

and warranties that assured potential investors that the loans met certain minimum quality standards, were made in accordance with sound underwriting and origination practices, and that the loan files contained all of the necessary documents. Am. Compl. ¶ 3. These representations and warranties are set forth in their entirety in the MLPA, and are incorporated by reference into the PSA. MLPA § 6, Ex. B; PSA § 2.03(b).[1]

The representations and warranties were made for the benefit of the Trust and its Certificateholders as a risk-allocation device to ensure that Defendant – and not the Trust or the Certificateholders – would bear the risk if the loans failed to comply with the representations and warranties set forth in the MLPA and PSA. Am. Compl. ¶ 4. Defendant, as the originator of the loans and the party with complete access to the pertinent information regarding each of the loans, was the appropriate party to bear that risk, and the governing agreements so provide. Id. ¶ 5; see also MLPA § 6(g) ("[I]t is acknowledged and agreed that the representations and warranties are being made for risk allocation purposes only . . . .").

Time and other constraints prevented potential investors from thoroughly reviewing the files for each loan in the pool. Am. Compl. ¶ 5. Consequently, as reflected in the MLPA, Defendant is not relieved of responsibility for the accuracy of its representations and warranties on the basis of any review or due diligence that could have been done on behalf of the Trust:

> Neither the delivery by the Seller of the Mortgage Files . . . nor the review thereof or any other due diligence by the Trustee, any Master Servicer, the Special Servicer, a Certificate Owner or any other Person shall relieve the Seller of any liability or obligation with respect to any representation or warranty or otherwise under this Agreement . . . .

MLPA 6(c) (emphasis added). The representations and warranties were a central component to

---

[1]      Copies of relevant excerpts of the MLPA and the PSA are attached to Defendant Bank of America, N.A.'s Memorandum of Law In Support Of Its Motion to Dismiss the Second Amended Complaint ("Defendant's Brief") as Exhibits 2 and 1, respectively.

the securitization transaction: in the absence of Defendant's representations and warranties, and the related contractual protections set forth in the MLPA and PSA, the Certificateholders would not have purchased the certificates at the agreed-upon price, and Defendant would not have had the capital necessary to securitize the loans.  Am. Compl. ¶ 4.

## III.     THE PSA AND MLPA PROVIDE A PURCHASE PRICE REMEDY

The critical importance of the representations and warranties to the Certificateholders, and the clear allocation of risk to Defendant for any breaches of those representations and warranties, is further reflected by the straightforward and efficient remedy contemplated by the PSA and MLPA to address breaches.  See generally PSA § 2.03(b).  According to the PSA and MLPA, within 90 days of notification of a breach of any representation and warranty that "materially and adversely affects the value of such Mortgage Loan, the related Mortgaged Property or the interests of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property," Defendant must: (1) cure the breach or defect or (2) purchase the affected Mortgage Loan at the Purchase Price (the "Purchase Price Remedy").  Id.[2]

Thus, the Purchase Price Remedy was designed to remedy, within 90 days, the inclusion of any defective loans in the pool, and to protect the Trust from financial consequences resulting from such breach (e.g., by reimbursing the Certificateholders for all reasonable, out-of-pocket expenses, including legal fees, incurred in connection with enforcement of the repurchase obligation).  PSA § 2.03(b).[3]  The parties agreed to the Purchase Price Remedy to allocate to

---

[2]     Had the written notification of breach been within two years of the Closing Date (i.e., before December 28, 2008), Defendant would also have had the option to substitute a conforming loan in place of the defective loan.  PSA § 2.03(b).

[3]     The Purchase Price is a straightforward calculation set forth in the PSA that is defined to include the sum of, inter alia: (i) the outstanding principal balance of the loan as of the date of purchase; (ii) all accrued and unpaid interest on such loan; (iii) all related, unreimbursed servicing advances; (iv) all reasonable, out-of-pocket expenses incurred in connection with the

Defendant the risk associated with loans that failed to comport with the dozens of representation and warranties set forth in the MLPA. Am. Compl. ¶ 4.

## IV.   DEFENDANT'S BREACH OF THE REPRESENTATIONS AND WARRANTIES

Defendant was in breach of numerous representations and warranties on the Closing Date. Specifically, Defendant transferred loans that did not comply with the representations and warranties set forth in the MLPA and PSA. See generally Am. Compl. ¶¶ 29-53. The systemic breach by Defendant of three of the representations and warranties contained in the MLPA (10, 24 and 36) underlies Plaintiff's demand that Defendant pay the Purchase Price for each of the Loans. Id. ¶ 54.[4]

As set forth in the Amended Complaint, and as discussed more fully below, Defendant breached Representation and Warranty 10 with respect to 21 of the Loans collateralized by properties located in Oklahoma or Washington because Defendant failed to include sufficient power-of-sale language under applicable state law to allow for practical realization through non-judicial foreclosure. Am. Compl. ¶¶ 30-38. (See infra Part IV.A.)

Defendant breached Representation and Warranty 36 with respect to all Loans because MFG's appraisal practices with respect to the Loans failed to comply with the requirements of FIRREA. Am. Compl. ¶¶ 39-49. (See infra Part IV.B.) The breach of Representation and Warranty 36 was corroborated by Defendant's own findings when it hired a consultant in 2006 to conduct an analysis of MFG's appraisal-ordering process. The consultant concluded that the

---

enforcement of the repurchase obligation, including legal fees; and (v) liquidation fees, if any. PSA § 1.01, at 46.

[4]      The September 6, 2012 notice sought to enforce the Purchase Price Remedy for all loans in MF4 securitization other than those that have been paid off as agreed at the Purchase Price, which includes the 282 Loans specifically identified as Exhibit 3 to the Amended Complaint. Am. Compl. ¶ 54. Because of the active nature of some of the Loans, their status may change during the course of this litigation. Id. ¶ 9 n.2.

appraisal practices violated FIRREA.  Id. ¶¶ 44-45.

Finally, Defendant breached Representation and Warranty 24 with respect to all Loans because the origination, servicing and collection practices of Defendant with respect to the Loans failed to meet customary industry standards.  Am. Compl. ¶¶ 50-52.  (See infra Part IV.C.) Defendant's departure from customary industry standards was recognized by its own internal analysis conducted in 2007.  Id. ¶¶ 24-25, 51.

## V.    THE BREACHES' MATERIAL AND ADVERSE EFFECT

Plaintiff alleged that the breaches had material and adverse effects on the "value of any such Mortgage Loan, the related Mortgage Property or the interests of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property" because the breaches increased the riskiness of the loan portfolios beyond what was contractually bargained for in the MLPA and PSA and resulted in loans that were worth less than loans that complied with the representations and warranties.  Am. Compl. ¶¶ 8, 38, 49, 53.

The Certificates derive their value and marketability from the quality of the underlying loans.  (The payment stream on the Certificates is the cash flow generated by the payments made on the underlying loans.)  Am. Compl. ¶ 7.  Because the defective loans have less desirable characteristics, the Certificates are riskier than what was represented in the PSA and MLPA. This additional risk should have been reflected in the price of the Certificates.  Id. Certificateholders rely on the truth and accuracy of the representations and warranties in determining whether to invest in the Certificates and to ascertain their value.  Thus, as alleged by Plaintiff, the breaches had a material and adverse effect on the interests of the Certificateholders in the Mortgage Loans with respect to all of the Loans.

## VI.   DEFENDANT'S REFUSAL TO PAY THE PURCHASE PRICE FOR THE DEFECTIVE LOANS

On September 6, 2012, Midland provided Defendant with the written notice mandated by Section 2.03(b) of the PSA, demanding that Defendant pay the Purchase Price for the Loans due to Defendant's systemic breaches of its representations and warranties. Am. Compl. ¶ 54.

According to the PSA, Defendant had 90 days thereafter (the "Initial Cure Period") to pay the Purchase Price for the Loans. To date, Defendant has refused to pay the Purchase Price for any of the loans that were the subject of Midland's September 5, 2012 demand letter.[5] Instead, a few days prior to the expiration of the Initial Cure Period, Defendant filed a declaratory judgment action in the Northern District of Illinois. Following Defendant's refusal to pay the Purchase Price for any of the Loans within the contractually mandated time, Midland commenced the instant action to enforce its rights under the PSA and MLPA, seeking the contractually-prescribed Purchase Price for each of the Loans.[6]

## ARGUMENT

## I.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court is to accept all well-pled facts alleged in the complaint as true and draw all inferences in favor of plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," and a

---

[5]     Because of the breadth and nature of the systemic breaches of the representations and warranties at issue with respect to the Loans, it would not have been possible for Defendant to "cure" the breaches and Defendant does not argue to the contrary; thus, in accordance with the PSA, purchase at the Purchase Price was the only available remedy.

[6]     Defendant asserted in its brief that Plaintiff's Amended Complaint is "seeking damages for 282 Loans (instead of repurchase)." Def.'s Br. 8. This statement misconstrues the Amended Complaint, which seeks the Purchase Price Remedy set forth in Section 2.03(b) of the PSA. See, e.g., Am. Compl. ¶¶ 9, 58-68.

plaintiff need only plead "enough factual matter (taken as true) to suggest that [a claim exists]." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 556 (2007). Twombly's "plausibility" requirement means only that facts must be alleged that allow the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." Elias v. Stewart Title of Ill., No. 09 C 6773, 2010 WL 4482102, at *2 (N.D. Ill. Nov. 1, 2010). Indeed, a motion to dismiss must be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." Orix Real Estate Capital Mkts., LLC v. Superior Bank, FSB, 127 F. Supp. 2d 981, 983 (N.D. Ill. 2000) (Orix applied this principle in denying a motion to dismiss a breach-of-warranty claim seeking to enforce a contractual repurchase remedy.)

In contrast to Defendant's overly aggressive interpretation of the pleading standard, the Supreme Court's decision in Twombly did not change the fundamentals of pleading. In Bissessur v. Indiana University Board of Trustees, 581 F.3d 599, 603 (7th Cir. 2009), the Seventh Circuit observed that "[o]ur system operates on a notice pleading standard; Twombly and its progeny do not change this fact." The Seventh Circuit has cautioned against over-reading Twombly. In Limestone Development Corp. v. Village of Lemont, 520 F.3d 797, 803 (7th Cir. 2008), the court stressed that the pleading of facts with particularity was not needed. Indeed, a motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd., 626 F. Supp. 2d 837, 856 (N.D. Ill. 2009). As discussed below, the Complaint meets the applicable pleading standards.

## II.    THE PSA AND MLPA DO NOT REQUIRE PLAINTIFF TO PLEAD "MATERIAL BREACH"

Defendant's argument that the Amended Complaint should be dismissed for failure to plead that the breaches of representations and warranties were "material" – in addition to

pleading that the breaches had a material and adverse effect – is contradicted by the plain language of the PSA, which dictates that all that needs be pled is that the breach had a "material and adverse effect." PSA § 2.03(b). Neither New York law nor the PSA requires Midland to plead "material breach" – a concept manufactured by Defendant.

The PSA expressly sets out the requisite elements to trigger the Purchase Price Remedy: (1) a breach of a representation or warranty; and (2) a showing that the breach "materially and adversely affects the value of such Mortgage Loan, the related Mortgaged Property or the interest of the Trustee or any Certificateholder in the Mortgage Loan or the related Mortgaged Property." Id. Thus, the parties specifically contracted that breaches must have a material and adverse effect, but the parties specifically did not include a separate requirement that a breach be a "material breach." PSA § 2.03(b). Where a contract between sophisticated parties is silent as to the inclusion of a particular term, a court should not read in such language "'under the guise of interpreting the writing.'" Wells Fargo Bank, N.A. v. Bank of Am., N.A., No. 10 Civ. 9584 (JPO), 2013 WL 1285289, at *10 (S.D.N.Y. Mar. 28, 2013) ("C-III") (quoting Reiss v. Fin. Performance Corp., 764 N.E.2d 958, 961 (N.Y. 2001)).

A claim for breach of warranty under New York law requires a plaintiff to plead that (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant. Promuto v. Waste Mgmt., Inc., 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999); see also Liberty Media Corp. v. Vivendi Universal, S.A., 923 F. Supp. 2d 511, 516 (S.D.N.Y. 2013); LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc., No. 04 Civ. 5452 (PKL), 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007) ("Merrill Lynch"). This well-settled standard has been reiterated in recent decisions

involving mortgage-backed securities. See C-III, 2013 WL 1285289, at *4; Wells Fargo Bank, N.A. v. Bank of Am., N.A., No. 11 Civ. 4062 (JPO), 2013 WL 372149, at *7 (S.D.N.Y. Jan. 31, 2013). Asserting a breach-of-warranty claim under New York law does not require pleading "material breach." In the face of this authority, Defendant's insistence upon a second, independent materiality requirement is mistaken.

In support of its mistaken argument, Defendant cites to three cases, all of which predated the cases cited above. Further, one of the cases that Defendant cites involved a contract that, unlike the PSA at issue here, specifically included a materiality requirement in connection with the representations and warranties and any remedy for breach thereof. In LTV Aerospace & Defense Co. v. Thompson-CSF, S.A. (In re Chateaugay Corp.), 155 B.R. 636 (Bankr. S.D.N.Y. 1993), aff'd, 198 B.R. 848 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (table), 1997 WL 138384 (2d Cir. 1997), the purchase agreement provided that "[n]o statement, representation or warranty made by any Seller in this Agreement . . . contains any untrue statement of material fact, or fails to state a material fact necessary to makes the statements contained herein or therein . . . not misleading." Id. at 650 (underline added).

Defendant next cites an Ohio court's trial ruling from the bench in a prior MF2/3 Litigation. Def.'s Br. 20-21. Defendant, however, fails to properly take into account the subsequent written rulings by the Oklahoma and Nevada courts. As noted passingly in Defendant's brief, subsequent to the Ohio court's ruling, an Oklahoma court explicitly rejected Defendant's "material breach" argument. Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. CIV-08-1125-C (W.D. Okla. Dec. 10, 2010) ("MF2/3 Oklahoma") (ECF No. 323) (the "MF2/3 Oklahoma December 2010 Opinion"). The court held, "[T]his Court remains unpersuaded that in addition to the clearly-stated requirement that Plaintiff prove the breach

materially affected an interest, Plaintiff must also prove material breach." MF2/3 Okla. Dec. 2010 Op. 45. So, too, did the Nevada court. Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n, No. 2:08-CV-1448 JCM (RJJ), 2011 WL 6300796, at *4 (D. Nev. Dec. 15, 2011) ("MF2/3 Nevada"). Moreover, the Oklahoma and Nevada courts had the benefit of full motion practice. The Ohio court, on the other hand, ruled from the bench without substantial motion papers before it.

Thus, Midland need only plead – as it has done – that the breaches had material and adverse effects on the value of the loans, the related mortgage property, or the interests of the Certificateholders at the time of the securitization. Am. Compl. ¶¶ 8, 38, 49, 53.[7] In cases involving mortgage-backed securities trusts, like MF4, New York courts have repeatedly held that material and adverse effect is determined at the time of securitization, finding that the harm to certificateholders arises from the risk of loss in the pool of loans and not the actual default of any particular loan. See, e.g., C-III, 2013 WL 1285289, at *10; Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475, 509 (S.D.N.Y. 2013); Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 892 F. Supp. 2d 596, 603 (S.D.N.Y. 2012) ("Assured"); Syncora Guar. Inc. v. EMC Mortg. Corp., 874 F. Supp. 2d 328, 335 (S.D.N.Y. 2012); MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 936 N.Y.S.2d 513, 522 (Sup. Ct. 2012), aff'd in part and modified in part on other grounds, 963 N.Y.S.2d 21 (App. Div. 2013) ("MBIA"). The increasingly well-settled New York law on this issue is consistent with decisions involving Defendant's earlier MF2 and MF3 series of loans, wherein two courts ruled that material and adverse effect should be determined as of the securitization closing date; on that basis, those courts excluded all evidence after that date, including evidence of the global financial crisis.

---

[7]     Accordingly, Defendant's statements regarding the post-securitization performance of the Loans (see, e.g., Def.'s Br. 5 & n.4) are wholly irrelevant.

<u>MF2/3 Okla.</u>, No. CIV-08-1125-C, 2011 WL 1303949, at *8 (W.D. Okla. Apr. 1, 2011); <u>MF2/3 Nev.</u>, 2011 WL 6300796, at **1-2.  It is telling that Defendant does not challenge the sufficiency of Midland's pleading of material and adverse effect with regard to the Loans, presumably because Defendant concedes that element has been adequately pled.  Rather, Defendant argues in error that "material breach" is required to be pled as an additional element above and beyond "material and adverse effect."   Because there is no such pleading requirement, Defendant's motion should be denied.

**III.    THE PSA AND MLPA DO NOT REQUIRE THE PLEADING OF SEPARATE, LOAN-BY-LOAN ALLEGATIONS**

Plaintiff has set forth in sufficient detail that it is entitled to the Purchase Price Remedy with respect to the Loans due to Defendant's systemic breach of three representations and warranties that had material and adverse effects on the interests of the Certificateholders.  The Amended Complaint sets forth in detail specific facts to support each element of Plaintiff's breach-of-warranty claim with respect to all of the Loans.  Specifically, Plaintiff alleges a contract between the parties (namely, the PSA and MLPA) (Am. Compl. ¶ 1); that contained express warranties with respect to material facts (<u>id.</u> ¶¶ 3, 29) that formed the basis of the bargain between the parties (<u>id.</u> ¶¶ 3-10); and that Defendant breached with respect to each Loan (<u>id.</u> ¶¶ 8-9, 29-53).  The Amended Complaint contains three separate sections, each describing in detail the systemic breaches of the three specific representations and warranties at issue here (10, 24 and 36) and the facts that support the Plaintiff's claim of breach with regard to the Loans.  <u>See</u> Am. Compl. ¶¶ 29-53.  Thus, the Amended Complaint clearly and succinctly puts Defendant on notice of the exact nature of Plaintiff's claims and its right to relief.

The PSA and the MLPA are contracts, and they do not modify or otherwise bear upon the federal pleading standard at issue on Defendant's motion.  Accordingly, Defendant's argument

about the significance of the PSA's and MLPA's use of the singular "Mortgage Loan," instead of the plural form of that noun, misses the mark. For example, Defendant argues in error that the PSA and MLPA specify that a complaint must allege a breach on a loan-by-loan basis. Def.'s Br. 11. The governing contracts provide nothing of the sort, as they do not even purport to speak to the pleading standards in a litigation seeking enforcement of the Purchase Price Remedy. Rather, they speak only to the contractual notice requirement. Accordingly, Defendant's argument should be disregarded entirely.

In any event, even if the Court were to entertain Defendant's argument, it also fails because it misconstrues the contractual notice requirement. The PSA simply requires Plaintiff to provide notice to Defendant of any breaches of the representations and warranties contained in the MLPA and to demand, in writing, the Purchase Price Remedy with respect to the loans affected. See PSA § 2.03 (b). By arguing for individualized loan notices, Defendant seeks to impose contractual requirements on Plaintiff that are not contained in either the MLPA or the PSA.

If Defendant wanted to impose upon Plaintiff the additional obligation to notify it separately of every breach of representation and warranty for each particular loan, it could have requested inclusion of such a provision in the MLPA and PSA. "[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." Vt. Teddy Bear Co. v. 538 Madison Ave. Realty Co., 807 N.E.2d 876, 879 (N.Y. 2004) (citation omitted) (internal quotation marks omitted). Because neither the PSA nor the MLPA requires Plaintiff to send separate notices regarding each breach of the representations and warranties, or to allege in its Amended Complaint separate claims for each loan, this Court should not read into the PSA or the MLPA such a requirement.

14

Without citing to any Federal Rule of Civil Procedure, case law, or contract provision in the PSA or MLPA, Defendant is essentially arguing that Plaintiff is required to allege approximately 282 separate breach-of-warranty claims. Defendant's position would lead to a mammoth Amended Complaint with unnecessary duplication. Such an approach to pleading is not required and is, indeed, highly disfavored under the Federal Rules of Civil Procedure. Intercom Ventures, LLC v. FasTV, Inc., No. 13 C 232, 2013 WL 2357621, at *6 (N.D. Ill. May 28, 2013) (the plaintiff need not separate out its complaint into dozens of repetitive counts, which would "ultimately result in confusion, not clarity" and "only serve to further delay [the] case"); United States v. Am. Linen Supply Co., 141 F. Supp. 105, 117 (N.D. Ill. 1956) (the Federal Rules of Civil Procedure "do[] not oblige a pleader to repeat a statement of a single factual transaction as many times as he has legal theories to support his claims. If a single transaction or occurrence gives rise to several claims, they may properly be pleaded in a single count."). Defendant is advocating for a unique pleading standard that would create exactly the problem that the Federal Rules of Civil Procedure seek to avoid: a complaint replete with verbose, repetitive and superfluous allegations. Indeed, in MBIA Ins. Corp. v. Credit Suisse Securities (USA) LLC, 927 N.Y.S.2d 517, 534 (Sup. Ct.), reconsideration granted on other grounds, 939 N.Y.S.2d 742 (table), 2011 WL 4865133 (Sup. Ct. 2011), the defendants moved to dismiss breach of warranty claims in connection with securitized residential second mortgages asserting that the plaintiff had "failed to specifically allege a breach of representation or warranty with respect to any particular loan (i.e., failure to identify thousands of loan-level breaches). Id. The MBIA court denied defendants' motion and held that "[a]lthough [the plaintiff] may ultimately be required to itemize the breaches constituting its contract claims, the pleadings give sufficient notice of the claim at this juncture." Id.

15

Consistent with the applicable pleading standards, and without separating its Amended Complaint into over two hundred counts, Plaintiff has alleged a breach and a material and adverse effect for each of the Loans. Plaintiff alleged Defendant's breach of Representation and Warranty 10, and a material and adverse effect, with respect to all 21 Loans secured by properties located in the states of Oklahoma and Washington. See Am. Compl. ¶¶ 30, 38. Plaintiff alleged Defendant's breach of Representation and Warranty 36, and a material and adverse effect, with respect to all Loans. See id. ¶¶ 39, 49. Lastly, Plaintiff alleged Defendant's breach of Representation and Warranty 24, and a material and adverse effect, with respect to all Loans. See id. ¶¶ 50, 53.

The Amended Complaint is not a bare-bones recitation of the legal elements of a breach-of-warranty claim. Rather, the Amended Complaint contains, at least, ten detailed paragraphs supporting its claim for breach of Representation and Warranty 10; eleven detailed paragraphs (and numerous subparagraphs) supporting its claim for breach of Representation and Warranty 36, and three detailed paragraphs (and numerous subparagraphs) supporting its claim for breach of Representation and Warranty 24.

Consequently, Plaintiff sufficiently alleged breaches of representations and warranties for each Loan. Plaintiff has met all of the required pleading standards and will ultimately prove a breach of representation and warranty and material and adverse effect for each of the Loans. Plaintiff is not required to prove its case in the Amended Complaint in order to properly state a claim. Plaintiff is only required to allege sufficient facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As such, the Amended Complaint sufficiently alleges a breach-of-warranty claim against Defendant for all Loans.

In a strained attempt to support its argument that Midland has failed to plead a breach of

16

a representation and warranty for each Loan, Bank of America erroneously relies on the recent decision in U.S. Bank National Ass'n v. Countrywide Home Loans, Inc., No. 652388/2011, 2013 WL 2356295 (N.Y. Sup. Ct. May 29, 2013) ("U.S. Bank"). Contrary to Defendant's assertions, the portion of U.S. Bank that is applicable to this case supports the denial of Defendant's Motion to Dismiss. The amended complaint in U.S. Bank contained two distinct claims: (1) Count I seeking the repurchase of thousands of loans due to "pervasive breaches" of the representations and warranties contained in the contract documents without alleging a breach of a representation and warranty for each loan; and (2) Count II seeking the repurchase of 495 specific loans due to breaches of the representations and warranties that defendant, Countrywide, refused to repurchase. Id. at **4-5. Countrywide moved to dismiss both of U.S. Bank's claims. Id. Ultimately, the court dismissed Count I without prejudice and denied Countrywide's motion to dismiss Count II with respect to the repurchase of 495 specific loans. Id. at **3-5.

Midland's claims in this case are far more analogous to the surviving Count II of U.S. Bank as compared to the dismissed Count I. Count II of U.S. Bank's amended complaint sought to compel Countrywide to repurchase 495 specific loans that U.S. Bank alleged contained breaches of representations and warranties, and that Countrywide had failed to repurchase after proper notice. 2013 WL 2356295, at *3, *5. In denying the motion to dismiss Count II, the court stated, "[w]hile Defendants may have preferred a more robust pleading, Count Two of the Amended Complaint as it stands is sufficient to state a breach of contract claim." Id. at *5. Further, the court stated, "Plaintiff was not required to list and provide particularized details as to the specific loans allegedly in breach." Id. As such, in U.S. Bank the court rejected nearly the identical argument advanced by Bank of America here.

Bank of America's flawed attempt to analogize the Amended Complaint here to Count I

17

of U.S. Bank's amended complaint, see Def.'s Br. 14-15, ignores the critical differences between the allegations and relief sought by U.S. Bank in Count I and the allegations and relief sought by Midland in this case. Instead of alleging specific breaches of representations and warranties, U.S. Bank sought repurchase based on the theory that "pervasive breaches" entitled it to require Countrywide to repurchase all loans – even loans U.S. Bank acknowledged did not contain any breaches of representations and warranties. 2013 WL 2356295, at *4. Here, in contrast to the dismissed claim and like the surviving claim in U.S. Bank, the Amended Complaint alleges specific breaches of representations and warranties for each of the Loans as to which it seeks the Purchase Price Remedy.

## IV. PLAINTIFF HAS ASSERTED VIABLE CLAIMS ARISING OUT OF DEFENDANT'S SYSTEMIC BREACHES OF THE THREE REPRESENTATIONS AND WARRANTIES SET FORTH IN THE AMENDED COMPLAINT

The Amended Complaint pleads sufficient facts regarding Defendant's systemic breaches of Representations and Warranties 10, 24 and 36 to state a claim upon which relief may be granted in compliance with Twombly's pleading standards. Throughout its 84-paragraph Amended Complaint, Plaintiff identifies in detail the alleged systemic breaches of Representations and Warranties 10, 24 and 36, and also specific facts supporting each alleged breach. Defendant's argument conflates pleading with proof. Because the claims have been adequately pled, Defendant's motion should be denied.[8]

---

[8] Defendant's argument that a jury's findings from a different repurchase action in the Western District of Oklahoma "destroy[s]" Plaintiff's "systemic flaws" theory is erroneous. Def.'s Br. 6-7. As an initial matter, Defendant's reliance on arguments from a jury verdict at the motion to dismiss stage of this case illustrates that the issue properly was left to the finder of fact at trial and is not appropriate for adjudication at this stage. Moreover, Defendant has misinterpreted the jury's verdict because the verdict itself was not specific as to systemic breaches versus loan-specific breaches; therefore Defendant's assertions amount to sheer speculation. In addition, while some evidence of systemic flaws was introduced at trial, the focus of the Oklahoma Action, including the trial, was on loan-specific breaches.

A.    **The Amended Complaint Sufficiently Alleges Breaches Of Representation And Warranty 10 For Each Loan Secured By Property In Oklahoma And Washington**

The Amended Complaint sufficiently alleges that Defendant has breached Representation and Warranty 10 with respect to "all Loans secured by properties in the states of Oklahoma and Washington . . . which represents 21 of the 282 Loans listed on Exhibit 3." See Am. Compl. ¶ 30.  Moreover, the Amended Complaint states "[b]ecause the pertinent language of the mortgage loan documents is identical for all Oklahoma and Washington loans, this breach of Rep 10 applies to all Oklahoma and Washington Loans." Id. ¶ 31.  Each of the 21 loans specifically secured by properties in Oklahoma and Washington are identified in Exhibit 3 to the Amended Complaint.

Further, the Amended Complaint identifies the statutory language required by both Oklahoma and Washington law to effectuate a non-judicial foreclosure versus the language contained in the mortgage loan documents that fails to comply with Oklahoma's and Washington's required statutory language. Id. ¶¶ 32-36.  The failure to include the required statutory language has denied Plaintiff the option of practical realization through non-judicial foreclosure. Id. ¶ 37.  Finally, the Amended Complaint alleges that the failure to include the required Oklahoma and Washington statutory language had a material and adverse effect on the value of the loans.  See id. ¶ 38.  As set forth below, Defendant's arguments regarding the alleged deficiencies in Plaintiff's pleading of breaches of Representation and Warranty 10 are unavailing.

1.    **Plaintiff Has Sufficiently Pled That Representation And Warranty 10 Required Defendant To Provide The Option Of Judicial Or Non-Judicial Foreclosure In All Mortgage Loans Secured By Property In Oklahoma And Washington**

Defendant argues that Plaintiff fails to state a breach of Representation and Warranty 10

19

because it only requires the inclusion of <u>either</u> judicial <u>or</u> non-judicial foreclosure and does not require that the purchaser be afforded the option of practical realization through non-judicial foreclosure. Defendant argues that the word "or" means <u>Defendant</u> had the option of which means of foreclosure to provide. But the representations and warranties are made for the benefit of the Trust and the Certificateholders, and a plain reading of Representation and Warranty 10 shows that Defendant was representing that the loan documents allowed <u>Plaintiff</u> the option of judicial or non-judicial foreclosure. Moreover, Defendant's argument is somewhat disingenuous since it is clear from the mortgage documents that Defendant attempted to provide both the required judicial and non-judicial foreclosure methods but simply failed to comply with the statutory language requirements imposed by Oklahoma and Washington. Am. Compl. ¶ 35.

While Plaintiff submits that the plain meaning of Representation and Warranty 10 is that the Plaintiff must be afforded the option of judicial or non-judicial foreclosure, even if the Court finds the language to be ambiguous, Defendant's motion should be denied. In a prior MF2/3 Litigation, the Western District of Oklahoma rejected Defendant's interpretation of Representation and Warranty 10 and held that it was ambiguous and susceptible to both interpretations and a question of fact. <u>MF2/3 Okla.</u> Dec. 2010 Op. 16. Accordingly, Defendant's argument that the Amended Complaint does not plausibly allege facts that could lead to recovery for the breach of Representation and Warranty 10 should be rejected.

### 2. Plaintiff Is Not Required To Allege A Failure To Achieve Practical Realization In Order To State A Claim For Breach Of Representation And Warranty 10

Defendant next argues that Plaintiff's claim for breach of Representation and Warranty 10 is not sufficiently pled because Plaintiff fails to allege whether any of the Washington or Oklahoma loans have defaulted and whether Midland has been unable to successfully foreclose or achieve "practical realization" on the property as a result of the "form language" in

Representation and Warranty 10. <u>See</u> Def.'s Br. 17-18. This argument is baseless, however, because, as explained above, post-Closing events are irrelevant to material and adverse effect. Defendant's breaches of the representations and warranties had a material and adverse effect on the Certificateholders as of the Closing Date because the loans were worth less – and the risk to investors was substantially greater – than what Defendant had represented.

Indeed, in <u>Syncora</u>, which involved the securitization of home equity line of credit ("HELOC") residential mortgage loans, and a repurchase remedy similar to the PSA, in response to the defendant's argument that "the repurchase provision contemplated a remedy only where breached representations and warranties caused actual adverse effect, and not simply an increase in risk," the court held that "nothing in the language of the parties' agreements provides for this result, and New York law does not support [the defendant's] construction." 874 F. Supp. 2d at 335.

Therefore, despite Defendant's arguments to the contrary, whether any of the Loans in Oklahoma and Washington have defaulted or whether foreclosure was prevented is irrelevant to Plaintiff's allegations that it suffered material and adverse effects in connection with Defendant's breach of Representation and Warranty 10. Material and adverse effect is not defined as default and "the breach need only cause harm, though not necessarily default." <u>E.g.</u>, <u>C-III</u>, 2013 WL 1285289, at *10 (citing <u>Syncora</u>, 874 F. Supp. 2d at 335); <u>MBIA</u>, 963 N.Y.S.2d at 22-23. Indeed the PSA does not reference cause, loss or default in connection with defendant's repurchase obligations. "If the sophisticated parties had intended that the plaintiff be required to show direct loss causation, they could have included that in the contract, but they did not do so . . . ." <u>Assured</u>, 892 F. Supp. 2d at 602.

### B. Plaintiff Has Alleged A Breach Of Representation And Warranty 36 With A Material And Adverse Effect With Respect To All Loans

Plaintiff has sufficiently alleged a breach of Representation and Warranty 36, which warrants that each appraisal "satisfied the guidelines in Title XI of [FIRREA]." See Am. Compl. ¶ 29(c). Despite Defendant's assertions to the contrary, Plaintiff devotes nearly five pages of its Amended Complaint to alleging, in a detailed manner, how Defendant's appraisal practices failed to comply with FIRREA's guidelines, especially its independence requirements, with respect to all of the Loans. Am. Compl. ¶¶ 39-49. These allegations include, in part, the following:

1. There is no evidence that Defendant's Board of Directors reviewed and adopted policies and procedures for an independent real estate appraisal program for its MFG, which originated the loans;

2. Defendant had its loan production staff select and order the appraisals;

3. Defendant permitted borrowers and/or mortgage brokers to select appraisers;

4. Defendant's designated appraisal review employee reported direct to the MFG group as opposed to being supervised by an independent appraisal department;

5. Even borrowers who were suspected of previously defrauding Defendant were permitted to select their own appraisers;

6. At the time of ordering an appraisal, Defendant routinely provided prohibited information to the appraisers regarding the value of the property; and

7. Defendant instructed appraisers to remove from their appraisals prohibited information provided to them by Defendant.

See id. ¶ 43(a)-(f). Indeed, the Amended Complaint also includes admissions from Defendant's former employees and consultants that its appraisal practices did not comply with the FIRREA guidelines. Id. ¶¶ 43(d), (f), 45, 47.

Ignoring that Plaintiff has pled systemic breaches with material and adverse effects, Defendant argues that the allegations regarding Representation and Warranty 36 are deficient because they fail to plead facts about any "particular appraisal ordered or conducted" with regard

to "any particular Loan." Def.'s Br. 19. However, the particular details of each breach are a matter of proof, not pleading.

Next, Defendant argues that the Plaintiff has misinterpreted Title XI of FIRREA. This argument not only distorts the allegations contained in the Amended Complaint and is more suited for summary judgment, but Defendant's interpretation of Representation and Warranty 36 has previously been rejected at the summary judgment stage. Defendant advanced the same interpretation of the language contained in Representation and Warranty 36 in a prior MF2/3 Litigation. In rejecting Defendant's interpretation of Representation and Warranty 36, the Court stated, "Defendant's argument that the statutory language in FIRREA does not regulate who may order an appraisal is not persuasive. . . . Accordingly, Defendant has not met its summary judgment burden that Warranty 35 does not include ordering of appraisal . . . ." MF2/3 Okla. Dec. 2010 Op. 26. With respect to Representation and Warranty 36, Plaintiff has stated a set of facts that plausibly state a claim upon which relief may be granted.

## C.    Plaintiff Has Alleged A Breach Of Representation And Warranty 24 With Respect To All Loans With A Material And Adverse Effect

The Amended Complaint alleges that "LaSalle breached Representation and Warranty 24 ('Rep 24') with respect to all Loans because LaSalle's origination and servicing of Loans did not meet customary industry standards in many ways . . . ." Am. Compl. ¶ 50. The Amended Complaint further alleges that Defendant failed to comply with customary industry standards in at least the following eight ways:

1.    Defendant did not receive, review, and analyze source operating statements or rent rolls for properties being financed, instead relying upon broker-prepared spreadsheets or summaries of operating statements and rent rolls;

2.    Defendant provided the broker prepared summaries to appraisers without telling them that the summaries were prepared by brokers and not the property owners or management companies;

23

3.     Defendant failed to perform an in-depth analysis of the financial condition of the borrowers and guarantors for the Loans;

4.     Defendant prohibited staff from communicating directly with the borrowers and guarantors of loans, instead requiring all communications to be directed to brokers;

5.     Defendant had a policy of awarding "top 10" brokers with additional leniency and exceptions to underwriting guidelines;

6.     Defendant did not personally inspect the collateral properties or verify information provided by brokers;

7.     Defendant emphasized speed and volume of loans over quality; and

8.     Defendant's appraisal practices violated the independence requirements of FIRREA.

Id. ¶ 50(a)-(h).  In addition to these specific factual allegations, Defendant confirmed that its own practices did not comply with customary industry standards through its own internal analyses. Id. ¶¶ 24-25, 51.

Once again, ignoring that Plaintiff has pled systemic breaches with material and adverse effects, Defendant argues that the allegations regarding Representation and Warranty 24 are deficient because the Amended Complaint "is silent" as to how any individual Loan was breached.  Def.'s Br. 22.  However, the particular details of each breach are a matter of proof, not pleading.

Defendant next argues that, as a matter of law, the term "origination" does not include underwriting or closing of loans.  See Def.'s Br. 24.  Defendant's position – that it did not make any representation about industry-compliant underwriting and closing practices –is absurd on its face, given how critical those processes are to the quality of the Loans.  In any event, this argument is not appropriate for adjudication at the motion to dismiss stage.  Rather, it is more appropriate for summary judgment – and, even at that stage, should be denied.  See, e.g., Merrill Lynch, 2007 WL 2324052, at *10 (denying summary judgment regarding the meaning of the

term "origination," as the term "is not wholly unambiguous and thus the intentions of the parties must be determined by a trier of fact").  Indeed, in a prior MF2/3 Litigation, the court held that the word "origination" was ambiguous and denied summary judgment on this issue.  <u>Wells Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n</u>, 643 F. Supp. 2d 1014 (S.D. Ohio 2009).  The court noted, however, that LaSalle's position in a prior litigation "that 'origination' included not only solicitation of the loan and its underwriting, but also extended through the securitization" <u>id.</u> at 1029, was "an admission by a party opponent that the word 'origination,' when used in the precise context at issue here – the representations and warranties in a mortgage loan purchase agreement involving securitization of commercial real estate loans – can include underwriting," <u>id.</u> at 1030.

## CONCLUSION

For all of the reasons set forth above, Defendant's motion should be denied in its entirety. In the event that the Court grants Defendant's motion, Plaintiff respectfully requests an opportunity to replead.

Dated:  October 28, 2013

Respectfully submitted,

LASALLE COMMERCIAL MORTGAGE
SECURITIES, INC., SERIES 2006-MF4 TRUST,
acting by and through its Master and Special
Servicer, MIDLAND LOAN SERVICES, a division
of PNC Bank, National Association, and whose
Trustee is WELLS FARGO BANK N.A.,

By:＿＿＿/s/ Mark H. Horwitch＿＿＿＿＿＿＿＿＿＿

Eric B. Fisher
Lindsay A. Bush
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York  10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Michael I Rothstein
Mark H. Horwitch
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. LaSalle Street, 7th Floor
Chicago, Illinois 60604
Tel: (312) 762-9450
Fax: (312) 762-9451

Ronald W. Dunbar, Jr.
Andrew E. Goloboy
DUNBAR LAW P.C.
197 Portland Street, 5th Floor
Boston, Massachusetts 02114
Tel: (617) 244-3550
Fax: (617) 248-9751

Paul D. Snyder
Karen E. Snyder
Bradley C. Mirakian
SNYDER LAW FIRM LLC
13401 Mission Road, Suite 207
Leawood, Kansas 66209
Tel: (913) 685-3900
Fax: (913) 440-0724

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint** was filed electronically with the United States District Court on October 28, 2013. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.


_____/s/_____Mark H. Horwitch_____