IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LASALLE COMMERCIAL MORTGAGE SECURITIES, INC., SERIES 2006-MF4 TRUST, acting by and through its Master and Special Servicer, MIDLAND LOAN SERVICES, a division of PNC Bank, National Association, and whose Trustee is WELLS FARGO BANK N.A., | Case No. 13 cv 05605 <br><br> Honorable John Z. Lee |
| Plaintiff, | Magistrate Judge: Hon. Susan E. Cox |
| - against - | |
| BANK OF AMERICA, N.A. as successor in interest to LaSalle Bank National Association, | (Consolidated with Case No. 12 cv 09612 for purposes of discovery) |
| Defendant. | |

**MIDLAND LOAN SERVICES' MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO RULE 12(c) OF THE FEDERAL RULES
OF CIVIL PROCEDURE, OR, IN THE ALTERNATIVE, MOTION TO
STRIKE CERTAIN AFFIRMATIVE DEFENSES PURSUANT TO RULE 12(f)**

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Tel: (212) 277-6500
Fax: (212) 277-6501

TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. LaSalle Street, 7th Floor
Chicago, Illinois 60604
Tel: (312) 762-9450
Fax: (312) 762-9451

DUNBAR LAW P.C.
197 Portland Street, 5th Floor
Boston, Massachusetts 02114
Tel: (617) 244-3550
Fax: (617) 248-9751

# TABLE OF CONTENTS

                                                                      Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ......................................................................................................................... 7

I.     PLAINTIFF IS ENTITLED TO JUDGMENT ON THE PLEADINGS AS TO THE FOUR AFFIRMATIVE DEFENSES ........................................................................ 7

     A.     The Rule 12(c) Standard ................................................................................ 7

     B.     Defendant's Contemporaneous Ownership Affirmative Defense Fails Because The Action Is Not A Derivative Suit ....................................................... 7

     C.     Defendant's *Bangor Punta* Affirmative Defense Fails Under The Standard Set Forth By The Seventh Circuit Court Of Appeals ........................................... 9

     D.     Defendant's Paragraph 114 And Paragraph 117 Affirmative Defenses Fail Because Spring Hill's Knowledge Does Not Bar Plaintiff From Bringing The Action ............................................................................................................ 11

II.    THE FOUR AFFIRMATIVE DEFENSES FAIL TO MEET THE REQUIREMENTS OF RULE 12(f) AND SHOULD THEREFORE BE STRUCK FROM THE ANSWER ............................................................................................... 11

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

CASES                                                                                                          Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................7

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596 (S.D.N.Y. 2012) ............9

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013) ............9

*Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703 (1974) ..............10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................7

*Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW), 1996 WL 48601
   (S.D.N.Y. Feb. 6, 1996) ..........................................................................................................8, 10

*City of Joliet v. Mid-City Nat'l Bank of Chi.*, No. 05 C 6746, 2012 WL 638735
   (N.D. Ill. Feb. 22, 2012) ...............................................................................................................7

*FirstMerit Bank N.A. v. Wolf Prof'l Ctr., Corp.*, No. 13 C 2750, 2013 WL 4847491
   (N.D. Ill. Sept. 10, 2013) ............................................................................................................11

*Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) .....................................7

*Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116 (S.D.N.Y. 2014) ..................9

*Mauck v. Mading-Dugan Drug Co.*, 361 F. Supp. 1314 (N.D. Ill. 1973) .......................................8

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 936 N.Y.S.2d 513 (Sup. Ct. 2012),
   *aff'd in part and modified in part on other grounds*, 963 N.Y.S.2d 21 (App. Div. 2013) ........9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cont'l Ill. Corp.*, 666 F. Supp. 1180
   (N.D. Ill. 1987) ...........................................................................................................................10

*Rock River Sav. & Loan Ass'n v. Am. States Ins. Co.*, 594 F.2d 633 (7th Cir. 1979) .....................9

*Rudzinski v. Metro. Life Ins. Co.*, No. 05 C 0474, 2007 WL 2973830 (N.D. Ill. Oct. 4, 2007) ....12

*Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, ---F. Supp. 3d----, 2014 WL 3018002
   (N.D. Ill. July 3, 2014) (Lee, J.) .................................................................................................12

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516 (E.D.N.Y. 2013),
   *aff'd*, 548 F. App'x 741 (2d Cir. 2014) ..................................................................................8, 9

*Shield Techs. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440
   (N.D. Ill. Sept. 19, 2012) ............................................................................................................12

*Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328 (S.D.N.Y. 2012) ..........................9

CASES (cont.)                                                                                                          Page(s)

*Wells Fargo Bank, N.A. v. Bank of America, N.A.*, No. 10 Civ. 9584(JPO),
    2013 WL 1285289 (S.D.N.Y. Mar. 28, 2013) ........................................................................... 9

RULES

Fed. R. Civ. P. 12(c) ................................................................................................... *passim*

Fed. R. Civ. P. 12(f) .................................................................................................... *passim*

Pursuant to Rules 12(c) and 12(f) of the Federal Rules of Civil Procedure, LaSalle Commercial Mortgage Securities, Inc., Series 2006-MF4 Trust (the "Trust"), acting by and through its Master and Special Servicer, Midland Loan Services ("Midland"), a division of PNC Bank National Association (collectively, "Plaintiff"), moves this Court for judgment on the pleadings on certain affirmative defenses pled by Bank of America, National Association ("Defendant") in its September 23, 2014 Answer to Plaintiff's Second Amended Complaint, ECF No. 202 (the "Answer")[1] or, alternatively, to strike those affirmative defenses from the pleading. For all the reasons set forth below, this motion (the "Motion") should be granted.

## PRELIMINARY STATEMENT

On the same date that Defendant filed its Answer to the operative complaint in this action, Defendant also filed its third motion seeking discovery from Spring Hill Capital Partners, LLC ("Spring Hill"), an investor in the certificates issued by the Trust. Defendant's first two attempts to seek judicial intervention in compelling discovery from Spring Hill were not successful. What seems plain from both the face of the Answer and the same-day filing of Defendant's Answer and its third discovery motion directed to Spring Hill is that the Answer has been saddled with meritless affirmative defenses that gratuitously invoke Spring Hill's name as a pretext to try again to obtain non-party discovery from Spring Hill. Defendant's assertion of meritless affirmative defenses in aid of its discovery tactics borders on vexatious.

The affirmative defenses in the Answer pertaining to Spring Hill fail as a matter of law:

First, the affirmative defense based on the "contemporaneous ownership rule" applies to shareholder derivative lawsuits. It has nothing to do with this action brought directly on behalf of a trust by the party authorized to do so under the trust's governing agreement. There is no

---

[1] A copy of the Answer is annexed hereto as Exhibit 1.

case law to support Defendant's novel invocation of the contemporaneous ownership rule. Thus, this defense should be dismissed or struck.

Second, the affirmative defense based on the *Bangor Punta* doctrine, like the contemporaneous ownership rule, is an extension of derivative standing principles that apply in shareholder litigation – not in a case such as this one. As a matter of law, Defendant cannot satisfy any of the Seventh Circuit's prerequisites for the applicability of the *Bangor Punta* doctrine, and there is no case law to support application of that doctrine in this case. Thus, this defense should be dismissed or struck.

Finally, what Spring Hill, a non-party investor, knew (or did not know) when it purchased certificates issued by the Trust, years after the alleged breaches of representations and warranties by Defendant, cannot possibly be the basis of a defense against Plaintiff, the party specifically authorized under the governing agreement to prosecute this lawsuit. Accordingly, the defenses based on Spring Hill's knowledge also should be dismissed or struck.

## FACTUAL BACKGROUND

In its Second Amended Complaint (ECF No. 72) (the "Complaint" (a copy of the Complaint without exhibits is annexed hereto as Exhibit 2)), Plaintiff alleges that Defendant, as successor in interest to LaSalle Bank National Association ("LaSalle"), breached representations and warranties made by LaSalle in a Mortgage Loan and Purchase Agreement dated as of December 20, 2006 (the "MLPA") in connection with the securitization of loans, and failed to pay the contractually required purchase price set forth in the Pooling and Servicing Agreement dated as of December 1, 2006 (the "PSA"). Compl. ¶ 1. The securitized loans were pooled and sold to the Trust, which, in turn, issued certificates to investors (the "Certificateholders"). *Id.* ¶¶ 1-2. Plaintiff further alleges that LaSalle's breaches, as of December 28, 2006 (the "Closing Date"), had a material and adverse effect on the interests of the Certificateholders because the

breaches increased the riskiness of the loans beyond what was contractually bargained for, making the certificates riskier than what was represented in the MLPA and the PSA. *Id.* ¶ 8.

The Trust brings this action (the "Action") by and through Midland, as the Special Servicer and Master Servicer for the Trust, under the PSA. Under section 2.03(e) of the PSA:

> The Master Servicer or Special Servicer (in the case of Specially Serviced Mortgage Loans) shall, for the benefit of the Certificateholders and the Trustee . . . enforce the obligations of the Mortgage Loan Seller under the Mortgage Loan Purchase Agreement. Such enforcement, including, without limitation, the legal prosecution of claims, if any, shall be carried out in such form, to such extent and at such time as the Master Servicer or the Special Servicer, as the case may be, would require were it, in its individual capacity, the owner of the affected Mortgage Loan(s).

PSA § 2.03(e) (a copy of the relevant excerpts of the PSA is annexed hereto as Exhibit 3). Under section 3.01(b) of the PSA, "the Master Servicer and the Special Servicer each shall have full power and authority, acting alone . . . to do or cause to be done any and all things in connection with such servicing and administration for which it is responsible which it may deem necessary or desirable." *Id.* § 3.01(b).

On September 25, 2013, Defendant filed a motion to dismiss the Complaint (ECF No. 83) which this Court denied on August 21, 2014 (ECF Nos. 176-177). Defendant filed its Answer on September 23, 2014. Before filing the Answer, Defendant sought third-party discovery from Spring Hill. Although the document discovery deadline in this case expired on February 28, 2014, Defendant waited until April 28, 2014 to first seek documents from Spring Hill, and until June 10, 2014, just weeks before the deposition deadline, to file a motion to compel discovery from Spring Hill.[2] As confirmed by Defendant's 30(b)(6) witness, Defendant has known for

---

[2] Defendant served several subpoenas (the "Subpoenas") on Spring Hill seeking testimony and documents (including communications and analyses) regarding the loans and certificates, Spring Hill's purchase of the certificates and this Action. MTC Order 3. Spring Hill objected to the requests for discovery as unduly burdensome and irrelevant, and Defendant moved to compel compliance with the Subpoenas (ECF No. 121) ("Spring Hill Discovery Motion No. 1").

years that Spring Hill is the Controlling Class Certificateholder of the Trust, and has been since October 2011.[3]

As noted by Magistrate Judge Cox in her order denying Spring Hill Discovery Motion No. 1, Spring Hill is not a party to this Action. *See* Order 5, Aug. 12, 2014, ECF No. 169 (the "MTC Order") ("Spring Hill is indisputably a non-party.") (a copy of the MTC Order is annexed hereto as Exhibit 4). Magistrate Judge Cox rejected the argument that discovery related to Spring Hill's knowledge of the loans and certificates was relevant to Defendant's defenses to this Action. *Id.* at 7. Recognizing that Spring Hill Discovery Motion No. 1 was being decided before the filing of an answer, the last sentence of the MTC Order notes that Defendant's yet-to-be-filed answer and affirmative defenses "may give rise to additional bases for relevance not currently before the Court." *Id.* at 10. Defendant moved to clarify the MTC Order and compel the production of certain Spring Hill documents on September 8, 2014 (ECF No. 188) ("Spring Hill Discovery Motion No. 2"). Spring Hill Discovery Motion No. 2 was denied by Magistrate Judge Cox on September 24, 2014 (ECF No. 208).

Presumably attempting to exploit the last sentence in the MTC Order and try again to take non-party discovery from Spring Hill, Defendant crafted four affirmative defenses that contend, in essence, that Plaintiff lacks standing to bring the Action because of non-party Spring Hill's purported knowledge of the loans and certificates:

> 114. Even if there existed any material default, breach, violation or event of acceleration under the documents evidencing or securing the loans at issue as of the Closing Date, which Defendant denies, the alleged material default, breach, violation or event of acceleration did not materially or adversely affect the value of the loans at issue, the related mortgage properties, and/or the interest of the Certificateholders ("Material Adverse Effect"). Plaintiff's purported expert witness, Dr. Joseph R. Mason, has opined that representation and warranty

---

[3] As defined in the PSA, a Controlling Class Certificateholder is a member of the class outstanding with the most subordinate class of regular certificates (other than the class X certificates) having at least 25% of its initial certificate balance. PSA § 1.01, at 21.

4

breaches alleged by Plaintiff caused a Material Adverse Effect because they increased the uncertainty concerning certain attributes of the MF4 Loans and how those loans would perform in the future, and that this uncertainty rendered the MF4 Loans less valuable than they would have been if no representation and warranty breaches had occurred. Dr. Mason has also testified in his deposition in this action that if the alleged defects in the MF4 Loans were disclosed to investors prior to their purchasing the Certificates, investors would not have suffered a Material Adverse Effect because they would not have overpaid for the Certificates, but rather would have priced them accordingly. The facts allegedly constituting the pervasive breaches of representations and warranties were publicly known prior to Spring Hill's purchase of the Certificates and, under the efficient market doctrine, were priced into the Certificates at the time Spring Hill purchased them. Moreover, on information and belief, Spring Hill had actual knowledge of the facts allegedly constituting the breaches.

115. Plaintiff's claims are barred, including under the contemporaneous ownership rule, because the sole remaining beneficiary of the Trust with an economic stake in this litigation, Spring Hill, did not own the Certificates at the time of the Closing Date and did not purchase its interest in the Trust until nearly five years after the MF4 securitization closed. *See Kaliski v. Bacot (In re Bank of N. Y. Derivative Litig.)*, 320 F.3d 291, 297 (2d Cir. 2003); *see also Kreindler v. Marx*, 85 F.R.D. 612, 614 (N.D. Ill. 1979). One purpose of the contemporaneous ownership rule is to prevent potential investors—such as beneficiaries of a trust, as here with Spring Hill, or corporate shareholders in a derivative action—from buying a lawsuit. *See Ensign Corp., S.A. v. Interlogic Trace, Inc.*, No. 90 CIV. 3497, 1990 WL 213085, at *2 (S.D.N.Y. Dec. 19, 1990). Another purpose of the rule is to ensure that actions brought in the name of a fictional legal entity, such as a business trust or corporation, are initiated by investors that have actually suffered an injury. *See id.*; *see also Midland Food Servs., LLC v. Castle Hill Holdings V, LLC*, 792 A.2d 920, 921-22 (Del. Ch. 1999). The contemporaneous ownership rule has been applied in shareholder derivative actions and in actions involving business trusts for the benefit of a principal beneficiary, such as Spring Hill here. *See SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 528 (E.D.N.Y. 2013); *see also At Home Claims, LLC v. Equinix, Inc. (In re At Home Corp.)*, No. 09-3205 TC, 2010 WL 1691325, at *2 (Bankr. N.D. Cal. Apr. 26, 2010).

116. Plaintiff's claims are barred, including under the "*Bangor Punta*" doctrine, because Spring Hill acquired its interest in the Trust at a substantial discount nearly five years after the alleged events giving rise to Plaintiff's complaint, and any recovery here by Spring Hill as the sole remaining beneficiary of the Trust and lone remaining economic stakeholder in this litigation, would constitute a windfall and unjustly enrich Spring Hill. *See Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703 (1974). The *Bangor Punta* doctrine is a rule of equity which prevents a legal entity such as a corporation or business trust from pursuing an action on behalf of a principal beneficiary who could not bring the action in its own name. *See id.* This doctrine

also prohibits investors that acquired control of a business trust or corporation at an arms-length price subsequent to any alleged prior wrongdoing from using its control of the trust or corporation to later sue for wrongs previously done to others. *See id.*; *see also Midland Food Servs. LLC*, 792 A.2d at 921-22; *Weaver v. First Bank of Schaumburg*, No. 83 C 6591, 1987 WL 10972, at *12 (N.D. Ill. May 8, 1987).

117. Plaintiff's claims are barred because, on information and belief, Spring Hill was aware of the alleged events giving rise to Plaintiff's Complaint prior to its acquisition of its interest in the Trust, acquired its interest in the Trust at a substantial discount when it bought the Certificates for approximately $174 million (just over 60 cents on the dollar) from the fair market value price of $290 million, and therefore it did not suffer any material adverse effect as a result of any alleged breach by LaSalle of any representation and warranty.

Answer ¶¶ 114-117 (the "Four Affirmative Defenses"). On the same day it filed the Answer, Defendant moved this Court for an order declaring certain discovery requested from Spring Hill as relevant to the Four Affirmative Defenses (defined herein) (ECF No. 204) ("Spring Hill Discovery Motion No. 3"). Plaintiff's opposition to Defendant's Spring Hill Discovery Motion No. 3 is due to be filed today.

As discussed more fully below, the Court should enter judgment on the pleadings dismissing the Four Affirmative Defenses as a matter of law, or, alternatively, strike the Four Affirmative Defenses from the Answer. The two defenses set forth in paragraphs 115 and 116 of the Answer fail as a matter of law, because they apply principles of derivative and equitable standing not relevant to a case, like this one, that is brought directly on behalf of the trust by the master and special servicer of the trust. The two other defenses at issue on this Motion (*see* Answer ¶¶ 114, 117) fail because they are based on Spring Hill's knowledge and conduct, which are not attributable to Plaintiff and do not estop Plaintiff from bringing the Action pursuant to the PSA. Seen in context, it appears that the Four Affirmative Defenses are not asserted as good faith defenses, but rather are part of Defendant's third attempt to obtain discovery from Spring Hill.

# ARGUMENT

## I. PLAINTIFF IS ENTITLED TO JUDGMENT ON THE PLEADINGS AS TO THE FOUR AFFIRMATIVE DEFENSES

### A. The Rule 12(c) Standard

Rule 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In a motion for judgment "on the pleadings, the court considers the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits." *City of Joliet v. Mid-City Nat'l Bank of Chi.*, No. 05 C 6746, 2012 WL 638735, at *1, *8 (N.D. Ill. Feb. 22, 2012). Affirmative defenses are pleadings governed by the pleading requirements of the Federal Rules and Rule 12(c). *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (deciding Rule 12(f) motion to strike affirmative defenses); *City of Joliet*, 2012 WL 638735, at *1, *8 (granting, in part, plaintiff's Rule 12(c) motion as to certain of defendants' affirmative defenses).

A Rule 12(c) motion for judgment on the pleadings is subject to the same plausibility standard that applies to a motion to dismiss under Rule 12(b)(6). *City of Joliet*, 2012 WL 638735, at *1; *see generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As discussed more fully below, applying the *Twombly-Iqbal* standard to the Four Affirmative Defenses, Plaintiff is entitled to judgment on the pleadings because Defendant has failed to plead any facts, even if taken as true, that state an affirmative defense that is plausible on its face and entitles it to relief.

### B. Defendant's Contemporaneous Ownership Affirmative Defense Fails Because The Action Is Not A Derivative Suit

Defendant's contemporaneous ownership affirmative defense fails as a matter of law. Even Defendant concedes that the contemporaneous ownership rule is a standing requirement

almost exclusively applied to shareholder derivative suits. Spring Hill Disc. Mot. No. 3, at 13 ("[T]he 'contemporaneous ownership' rule has traditionally been applied in the context of shareholder derivative actions . . . .") (a copy of the Spring Hill Discovery Motion No. 3 as electronically filed and without exhibits is annexed hereto as Exhibit 5); *Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW), 1996 WL 48601, at \*6 (S.D.N.Y. Feb. 6, 1996) ("[T]he 'contemporaneous ownership' rule applies only to a shareholder derivative suit, as its language suggests, and does *not* apply to a direct suit by a corporation."); *Mauck v. Mading-Dugan Drug Co.*, 361 F. Supp. 1314, 1318 (N.D. Ill. 1973) ("The doctrine of 'contemporaneous ownership' does not apply to a suit which is brought by the corporation itself to enforce its own rights."). The rule requires that a plaintiff in a shareholder derivative suit plead that it was a shareholder at the time of the transaction at issue in the lawsuit. *Bensen*, 1996 WL 48601, at \*5.

In the Answer, Defendant asserts that the Action is barred by the contemporaneous ownership rule because Spring Hill is the only current Certificateholder and Spring Hill did not own the certificates as of the Closing Date. Defendant misapplies the contemporaneous ownership rule because the Action is not a derivative suit and has not been commenced by any Certificateholder, including Spring Hill. MTC Order 5 ("Spring Hill is indisputably a non-party."). The Action is direct in nature and was commenced by the Trust (acting through the master and special servicer), not investors in the Trust. Moreover, Certificateholders of the Trust are not shareholders. No court in any jurisdiction has applied the contemporaneous ownership rule to a case like this Action, which is direct in nature and was commenced by the master or special servicer of a commercial mortgage-backed securities trust. Thus, the contemporaneous ownership rule is inapplicable to this Action and fails as a matter of law.[4]

---

[4] Defendant's reliance on *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516 (E.D.N.Y. 2013), *aff'd*, 548 F. App'x 741 (2d Cir. 2014), is misplaced. In *SC Note*,

Alternatively, the defense fails as a matter of law for the independent reason that material and adverse effect is determined as of the Closing Date and, therefore, events surrounding Spring Hill's investment in the certificates (years after the closing date) have no bearing on the Action whatsoever.[5]

### C. Defendant's *Bangor Punta* Affirmative Defense Fails Under The Standard Set Forth By The Seventh Circuit Court Of Appeals

The *Bangor Punta* doctrine, which Defendant pleads as an affirmative defense in the Answer, is equally inapplicable to the Action and fails as a matter of law. Answer ¶ 116. Like the contemporaneous ownership rule, the *Bangor Punta* doctrine is an extension of the shareholder derivative standing requirements that equitably bars a plaintiff from bringing an action if "(1) the plaintiff is a shareholder who has acquired his shares at a fair price from those who 'participated or acquiesced' in earlier acts of alleged corporate mismanagement; and (2) the claim for relief seeks damages for those same acts of alleged corporate mismanagement." *Rock River Sav. & Loan Ass'n v. Am. States Ins. Co.*, 594 F.2d 633, 635 (7th Cir. 1979). This principle of equitable standing also precludes a corporation from asserting a cause of action if the

---

the court dismissed an *investor's* action against the trustee, master servicer and special servicer of a commercial mortgage-backed securities trust, based on the contemporaneous ownership rule, because the plaintiff-investor did not own shares at the time of the alleged wrongdoing. *Id.* at 530. *SC Note* is thus distinguishable from this Action, which has not been brought by an investor in the Trust.

[5] In this case, Defendant's breach and material and adverse effect are both determined at the time of securitization (*i.e.*, December 2006), thereby making irrelevant what occurred after such time. In cases involving mortgage-backed securities trusts, New York courts have consistently held that breach and material and adverse effect are determined at the time of securitization, finding that the harm to certificateholders arises from the risk of loss and not the actual default of any particular loan. *See*, *e.g.*, *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 131 (S.D.N.Y. 2014); *Wells Fargo Bank, N.A. v. Bank of America, N.A.*, No. 10 Civ. 9584(JPO), 2013 WL 1285289, at *10 (S.D.N.Y. Mar. 28, 2013); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 509 (S.D.N.Y. 2013); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596, 603 (S.D.N.Y. 2012); *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 335 (S.D.N.Y. 2012); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 936 N.Y.S.2d 513, 522 (Sup. Ct. 2012), *aff'd in part and modified in part on other grounds*, 963 N.Y.S.2d 21 (App. Div. 2013).

shareholder is barred from bringing the action in its own name. *Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co.*, 417 U.S. 703, 713 (1974).

Applying the standard set forth by the United States Court of Appeals for the Seventh Circuit in *Rock River*, Defendant's *Bangor Punta* defense fails on every level:

- Spring Hill is not a plaintiff (and there is no allegation in the Answer that it is); rather, as has already been determined by Magistrate Judge Cox, Spring Hill is a non-party to this Action;

- Spring Hill is not a shareholder (and there is no allegation in the Answer that it is); rather, Spring Hill is a Certificateholder in the Trust;

- Spring Hill did not purchase shares from prior shareholders that participated or acquiesced in any alleged mismanagement (and there is no allegation in the Answer that it did); rather, Spring Hill purchased certificates from prior Certificateholders of the Trust who had no involvement in LaSalle's alleged breaches of representations and warranties; and

- The Action does not seek relief for corporate mismanagement or, by analogy, mismanagement of the Trust (and there has never been any allegation in any pleading to that effect); rather, the Action seeks relief spelled out in the PSA from Defendant for LaSalle's breaches of representations and warranties at the time of the securitization.

Defendant has pled no facts to support the *Bangor Punta* defense against Spring Hill; and the defense fails on its face. There is no plausible basis to apply the *Bangor Punta* defense in this Action. *See Bangor Punta*, 417 U.S. at 713 ("Thus, where equity would preclude the shareholders from maintaining an action in their own right, the corporation would also be precluded."); *Bensen*, 1996 WL 48601, at *4-5 (declining to apply the *Bangor Punta* doctrine); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cont'l Ill. Corp.*, 666 F. Supp. 1180, 1196-97 (N.D. Ill. 1987) (declining to apply the *Bangor Punta* doctrine). Therefore, the *Bangor Punta* defense fails as a matter of law.

### D. Defendant's Paragraph 114 And Paragraph 117 Affirmative Defenses Fail Because Spring Hill's Knowledge Does Not Bar Plaintiff From Bringing The Action

The affirmative defenses found in paragraphs 114 and 117 of the Answer also fail as a matter of law. In these two paragraphs, Defendant alleges that Spring Hill was not materially and adversely affected by LaSalle's breaches of representations and warranties because the facts constituting the breaches were publicly known prior to Spring Hill's investment in the certificates (¶ 114) and because Spring Hill was aware of the events giving rise to the Complaint prior to its investment (¶ 117). Defendant alleges that because Spring Hill paid a discounted price for the certificates in October 2011, which reflected such knowledge, such breaches did not therefore materially and adversely affect Spring Hill's interest. Answer ¶¶ 114, 117.

What Defendant neglects to plead and what ultimately undercuts these two affirmative defenses is that, pursuant to the PSA and as described above, Plaintiff is empowered to pursue the Action so long as such breaches materially and adversely affected the interests of any Certificateholder. PSA § 2.03(b). As a result, Spring Hill's knowledge and investment decision are utterly irrelevant and certainly not a basis for an affirmative defense to this Action. Thus, Plaintiff is entitled to judgment on the pleadings dismissing these two affirmative defenses.

### II. THE FOUR AFFIRMATIVE DEFENSES FAIL TO MEET THE REQUIREMENTS OF RULE 12(f) AND SHOULD THEREFORE BE STRUCK FROM THE ANSWER

Alternatively, the Court should strike the Four Affirmative Defenses pursuant to Rule 12(f). Motions to strike, though disfavored by the courts, are granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *FirstMerit Bank N.A. v. Wolf Prof'l Ctr., Corp.*, No. 13 C 2750, 2013 WL 4847491, at *2 (N.D. Ill. Sept. 10, 2013) (citation omitted) (internal quotation mark omitted). Thus, if the affirmative defenses are insufficient as a matter of law or present no

questions of law or fact then the Rule 12(f) motion should be granted. *Rudzinski v. Metro. Life Ins. Co.*, No. 05 C 0474, 2007 WL 2973830, at *1 (N.D. Ill. Oct. 4, 2007) (granting Rule 12(f) motion, in part); *see also* Fed. R. Civ. P. 12(f) ("The court may strike from any pleading an insufficient defense . . . .").

An affirmative defense must satisfy a three-part test to survive a motion to strike under Rule 12(f): "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge." *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, ---F. Supp. 3d----, 2014 WL 3018002, at *3 (N.D. Ill. July 3, 2014) (Lee, J.) (citation omitted) (internal quotation marks omitted). If any of these three requirements are not met, the affirmative defense "must be stricken." *Rudzinski*, 2007 WL 2973830, at *1.

This Court should apply the heightened Rule 12(b)(6) *Twombly-Iqbal* pleading standard discussed above to this Rule 12(f) motion, as numerous courts in this district have done. *Sarkis'*, 2014 WL 3018002, at *4 (applying the *Twombly-Iqbal* standard in Rule 12(f) motion and striking defendant's affirmative defenses); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012) (applying the "majority view that *Twombly* and *Iqbal* apply to affirmative defenses"). As discussed above, none of the Four Affirmative Defenses withstand the Rule 12(b)(6) *Twombly-Iqbal* pleading standard. An affirmative defense that fails to meet any one of the three parts of the Rule 12(f) test should be struck. Thus, the Court should strike the Four Affirmative Defenses from the Answer.

# **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment dismissing the Four Affirmative Defenses as a matter of law or, alternatively, striking the Four Affirmative Defenses from the Answer, and granting such other and further relief this Court deems just and proper.

Dated: October 15, 2014

Respectfully submitted,

LASALLE COMMERCIAL MORTGAGE SECURITIES, INC., SERIES 2006-MF4 TRUST, acting by and through its Master and Special Servicer, MIDLAND LOAN SERVICES, a division of PNC Bank, National Association, and whose Trustee is WELLS FARGO BANK N.A.,

By: s/ Mark H. Horwitch
One of Midland's Attorneys

Eric B. Fisher
Katie L. Weinstein (Admitted *pro hac vice*)
Lindsay A. Bush
Tessa B. Harvey (Admitted *pro hac vice*)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York  10019-6708
Tel: (212) 277-6500
Fax: (212) 277-6501

Michael I Rothstein
Mark H. Horwitch
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
The Rookery Building
209 S. LaSalle Street, 7th Floor
Chicago, Illinois 60604
Tel: (312) 762-9450
Fax: (312) 762-9451

Ronald W. Dunbar, Jr. (Admitted *pro hac vice*)
Andrew E. Goloboy
DUNBAR LAW P.C.
197 Portland Street, 5th Floor
Boston, Massachusetts 02114
Tel: (617) 244-3550
Fax: (617) 248-9751

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing within **Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the Alternative, Motion to Strike Certain Affirmative Defenses Pursuant to Rule 12(f)** was filed electronically with the United States District Court on October 15, 2014. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

                                                                   s/ Mark H. Horwitch