# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BANK OF AMERICA, NATIONAL ASSOCIATION, as successor by merger to LASALLE BANK NATIONAL ASSOCIATION, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No: 12 C 9612 |
| v. | ) ) ) | District Judge John Z. Lee |
| | ) | Magistrate Judge Susan E. Cox |
| LASALLE COMMERCIAL MORTGAGE SECURITIES, INC., SERIES 2006-MF4 TRUST, acting by and through its Master and Special Servicer, MIDLAND LOAN SERVICES, a division of PNC Bank, National Association and whose Trustee is WELLS FARGO BANK, N.A.., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| LASALLE COMMERCIAL MORTGAGE SECURITIES, INC., SERIES 2006-MF4 TRUST, acting by and through its Master And Special Servicer, MIDLAND LOAN SERVICES, a division of PNC Bank, National Association, and whose Trustee is WELLS FARGO BANK, N.A., | ) ) ) ) ) ) ) | Case No: 13 C 5605 District Judge John Z. Lee Magistrate Judge Susan E. Cox |
| Plaintiff, | ) ) | |
| v. | ) ) ) | (Consolidated with Case No. 12 C 09612 for Purposes of Discovery) |
| BANK OF AMERICA, NATIONAL ASSOCIATION, as successor in interest to LaSalle Bank National Association, | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Before the Court is Bank of America's second motion to compel responses to Subpoena *Duces Tecum* and Subpoenas *Ad Testificandum* by non-party Spring Hill Capital Partners, LLC [dkts. 193 and 204]. For the reasons stated below, the Court denies this motion.

**STATEMENT**

The two cases which give rise to the instant motion arise out of a dispute concerning the sale and securitization of mortgage loans. The movant, Bank of America "(BOA"), is the successor in interest to LaSalle Bank National Association ("LaSalle"), which is alleged to have breached various representations and warranties contained in a Mortgage Loan Purchase Agreement ("MLPA"). Under this agreement, executed in December 2006, LaSalle Bank agreed to sell a pool of residential mortgages loans to LaSalle Commercial Mortgage Securities ("LaSalle Commercial'). These parties, along with Midland Loan Services ("Midland"), as the Master Servicer for these loans, and Wells Fargo Bank, as Trustee of the LaSalle Commercial Mortgage Trust 2006-MF4 (the "Trust"), had entered into a separate Pooling and Servicing Agreement ("PSA"). In that agreement the mortgage loans were transferred to the Trust, which then issued certificates to investors, thereby securitizing the mortgage loans.

Whether BOA breached its warranties and representations in 2006 (when the transaction closed) is at the heart of the two pending actions: one, an action by BOA that it did not, in fact, do so, and one by Midland, in its capacity as Master Servicer, in which it claims BOA breached the MLPA and demands that BOA repurchase all of the loans. (This Second Amended Complaint is the subject of a pending motion to dismiss.)

BOA previously served several subpoenas on Spring Hill Capital Partners, LLC, the only certificate holder for the loans in question and, unlike Midland who is the named plaintiff by virtue of its role as Master Servicer for the Trust, the party who will benefit if a material breach of the

MLPA is established and BOA has to repurchase the loans. The Court previously sustained Spring Hill's objections to these subpoenas in an Order dated August 12, 2015.[1] BOA did not appeal this Order. It did, however, seek clarification of the Order, asking the Court to enforce an agreement it believed it had reached with Spring Hill about certain materials responsive to the subpoenas. The Court, finding that any such offer had been vitiated by BOA's motion to enforce the subpoenas, orally denied that motion on September 24, 2014.[2]

In the Court's order denying BOA's motion to enforce, the Court planted the seed for the instant motion to compel. The Court held that the Second Amended Complaint, which alleges material breaches of warranties and representatives made at the time of the closing, did not provide a basis for discovery of information relating to Spring Hill's investment and acquisition of the certificates several years later with the proviso that "[t]he Court notes, however, that an answer and affirmative defenses to the Second Amended Complaint have not been filed. That pleading may give rise to additional bases for relevance not currently before the Court."[3]

BOA has asserted several affirmative defenses in its Answer which it contends give rise to relevance for the long-sought after documents from Spring Hill. All of these defenses are the subject of a motion to strike which is fully briefed and awaiting a decision by the District Judge. Of course, if the District Judge rules that these defenses are proper, the information sought by BOA from Spring Hill would be relevant. Ordinarily, discovery is not stayed when a party attacks another party's pleadings, for example during the pendency of a motion to dismiss.[4] It is a routine matter for this Court to allow discovery to proceed against a party while its motion to dismiss is under consideration so that discovery is not unnecessarily delayed. In this case, however, such a

---

[1] Dkt. 160.
[2] Dkt. 197.
[3] Dkt. 160, p. 10.
[4] *See, e.g. New England Carpenters Health & Welfare v Abbott Laboratories, Inc.,* No. 12 C 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013).

3

result would not be in the interest of justice. For one thing, Spring Hill is *not* a party to this litigation regardless of its interest in the outcome. To allow this subpoena to be enforced against Spring Hill subjects it to a significant burden which, should the defenses be struck, it would not otherwise have to bear. Moreover, there is no other outstanding discovery pending but for this subpoena. Delaying its enforcement until after the motion to strike is decided will not delay either the discovery or resolution of this case. For another, this Court's review of the asserted defenses and the case law supporting their applicability to this action suggests that Midland's motion to strike raises significant (and perhaps fatal challenges) to them.

To find the "contemporaneous ownership rule" defense validly pleaded here, the District Judge must analogize this action to a shareholder's derivative suit for it is only in that specific context that courts have recognized the applicability of this doctrine.[5] But it is not Spring Hill, the certificate holder that brings this action, it is Midland, the trustee, and it does so pursuant to warranties and representations and specific remedies for breaches of those warranties and representations which are carefully set forth in the documents governing the parties' relationship. This Court is unwilling to stretch this doctrine further in the context of a discovery motion. Similarly, the applicability of the *Bangor Punta* doctrine, an equitable extension of a derivative action, states that a plaintiff cannot bring a lawsuit if he acquired his shares at a fair price from those who participated in the earlier alleged mismanagement and it is from those acts the damages are derived.[6] For this Court, the application of this doctrine to facts in which Spring Hill is neither the plaintiff, nor a shareholder, nor the purchaser of "shares" from any party involved in the original transaction, is a reach, particularly, as we already have stated, in the context of a discovery

---

[5] *Benson v. Am. Ultramar Ltd.,* No. 92 Civ. 4420 (KWM), 1996 WL 48601, *6 (S.D.N.Y Feb. 6, 1996); *Mauck v. Mading-Dugan Drug Co.,* 361 F.Sypp. 1314, 1318 (N.D. Ill. 1973). Indeed this appears to be well-settled law.
[6] *Bangor Punta Operations, Inc. v. Bangor Aroostook R.R. Co.,* 417 U.S. 703, 713; *Rock RiverSav. & Loan Ass'n v. Am. States Ins. Co.,* 594 F.2d 633, 635 (7th Cir. 1979).

4

dispute. Further the damages sought in this action do not derive from the Trustee's mismanagement but, rather, from alleged breaches of warranties and representatives to the Trustee at the time the transaction closed.

At the heart of BOA's argument regarding relevance is the notion that it is simply inequitable to allow Spring Hill, which bought the certificates at a discounted price, to benefit from the contractually bargained for remedies available under the operative documents if there was a breach of warranties and representations. BOA wants to argue that if Spring Hill knew what it was buying and bought it in spite of that knowledge, it should not be permitted to benefit from this action. Accordingly, BOA wants to know the extent of Spring Hill's awareness of its own risk before the purchase. But this defense seems fundamentally at odds with the rights and remedies of the parties to which BOA explicitly agreed when the transaction closed. These remedies are no less applicable because the subsequent holder of the certificates acquired them knowing the breaches may have occurred and bought them anyway. To so find seems to this Court to be re-writing the parties written agreements (and the remedies contained therein) even though the parties must have anticipated that the certificates from time to time would be sold. In any event, it is up to the District Judge to find otherwise. We will not do so to resolve this discovery dispute in BOA's favor.

One argument we can put to rest without having to address the affirmative defenses before the District Judge. We have carefully examined the testimony of Dr. Mason and do not find that he in any way suggested that the right to recover here would be tempered by Spring Hill's knowledge of the alleged breaches, thus making the discovery sought here relevant. Dr. Mason made it clear that the material adverse effect of any breach is determined at the time of securitization and not

5

many years after the transaction closed. To find otherwise would be a gross distortion of his testimony.

Accordingly, we deny BOA's motion to obtain this discovery.

**ENTER:**

**DATED:** January 15, 2015 /s/ Susan E. Cox_____
Susan E. Cox
United States Magistrate Judge